SIEGMAN ET UX. *v.* THE EQUITABLE TRUST COMPANY

[No. 92, September Term, 1972.]

*Decided December 8, 1972.*

310

*Motion for rehearing filed January 8, 1973; denied January 9, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Lee Stuart Thomson* and *Harry Goldman, Jr.*, for appellants.

*Robert M. Wright*, with whom were *John F. Miller, Whiteford, Taylor, Preston, Trimble & Johnston* and *Miles & Janssens* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

Mr. and Mrs. Richard H. Siegman, appellants, brought this action in the Circuit Court for Baltimore County seeking recovery from The Equitable Trust Company, appellee, in a three count declaration which alleges wrongful dishonor of their checks, conversion of the proceeds of their joint checking account, and civil malicious prosecution. At the trial, Judge Raine granted the defendant's motion for a directed verdict on the malicious prosecution count, but the claims under the remaining two counts were submitted to the jury. A verdict was returned in favor of the Siegmans for $5,000 compensatory and $15,000 punitive damages.

The trial judge left the $5,000 verdict for the plaintiffs in compensatory damages undisturbed,[1] but granted

---

1. No party appeals from the award for compensatory damages.

defendant's motion for a judgment n.o.v. so as to nullify the award of punitive damages. The Siegmans bring this appeal protesting the loss of their punitive damages as well as the elimination of their civil malicious prosecution claim.

Richard Siegman's misfortunes began at approximately ten o'clock on the morning of January 11, 1967 when he received a telephone call from one George Martin, a "horse racing tout" with whom Siegman had previous "business" dealings at the various tracks in the Maryland area. This aficionado of the sport of kings was calling to inform Siegman that he was finally in possession of the $500 necessary to discharge his indebtedness to Siegman. The two men agreed to meet and liquidate the liability, appropriately enough, near Pimlico Race Track. When they met, Siegman learned that Martin intended to satisfy the debt by using a part of the proceeds of a $1,939.08 check drawn on The Equitable Trust Company by the Jefferson Federal Savings & Loan Association and payable not to Martin but to the order of one Roger Morency and purportedly indorsed in blank by Morency. As Martin did not have an account with Equitable, he told Siegman that he doubted the bank would honor a request by him to cash the check. Siegman, who had been banking at Equitable for sixteen or seventeen years, therefore, volunteered to cash the check and simply retain his $500.

The two drove together to the Edmondson Avenue Branch of the bank and en route Martin became the second indorser on the check. Leaving Martin in the car, Siegman entered the bank and was referred to Mr. Samuel Johnson, the branch manager. Siegman told the manager that he wanted to cash the check, but he added that he did not wish to do so "unless it was good." Johnson, after determining that there were sufficient funds to cover the check and that there were no outstanding stop-payment orders, told Siegman to indorse it and then gave him cash. Siegman retained his $500, and gave the balance to Martin. Nothing further was heard

concerning the matter until February 1 when the real trouble began.

On February 1, Siegman received a telephone call from the branch manager informing him that the Morency indorsement was a forgery and as the last indorser he would have to make the check good. In subsequent phone calls Johnson suggested Siegman obtain a loan from Equitable to cover the check which, on the advice of counsel, he refused to do. When informed of this decision, the bank, through a debit memo, charged the amount of the purported obligation against the balance of approximately $250 in Siegman's checking account which was held jointly with his wife. This action wiped out the entire account and created a substantial overdraft. Because of this, the bank proceeded to dishonor a number of checks drawn by the Siegmans which otherwise would have been paid. The question of the overdraft was referred to an attorney who instituted suit on behalf of the bank against the Siegmans in the Circuit Court for Howard County to collect the amount of the deficit. That court granted summary judgment for the Siegmans after determining that Maryland law does not permit the debt of one of two joint checking account owners to be charged against the joint account. Armed with this favorable judicial determination the Siegmans brought the suit which is now on appeal before us.

Here appellants initially contend that the trial judge committed reversible error when he granted the bank a judgment n.o.v. and thereby nullified the jury's award of punitive damages. Judge Raine did so after he concluded that "there is not sufficient evidence of malice or oppression or spite to submit the issue of punitive damages to the jury." It is well settled in this State that there can be no award of punitive damages in a pure action for breach of contract. *St. Paul at Chase v. Mfrs. Life Insur.*, 262 Md. 192, 278 A. 2d 12, *cert. denied*, 404 U. S. 857 (1971). The appellants, however, have not brought this suit in contract but rather in tort for conversion and wrongful dishonor. In a tort case where

punitive damages are permitted, in order to obtain such an award a plaintiff must prove actual malice [2] or its legal equivalent. *See D.C. Transit System v. Brooks,* 264 Md. 578, 287 A. 2d 251 (1972) ; *Daugherty v. Kessler,* 264 Md. 281, 286 A. 2d 95 (1972) ; *Associates Discount v. Hillary,* 262 Md. 570, 278 A. 2d 592 (1971) ; *St. Paul at Chase v. Mfrs. Life Insur., supra; Damazo v. Wahby,* 259 Md. 627, 270 A. 2d 814 (1970).

This Court in *Drug Fair v. Smith,* 263 Md. 341, 352, 283 A. 2d 392 (1971) defined actual malice in the following terms:

> "Actual or express malice may be characterized as the performance of an unlawful act, intentionally or wantonly, without legal justification or excuse but with an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the plaintiff."

So, where an act, though wrongful, is committed in the honest assertion of a supposed right and without any evil intention, there is no ground on which punitive damages can be awarded. *Associates Discount v. Hillary,* 262 Md. 570, 278 A. 2d 592 (1971) ; *B. & O. R.R. Co. v. Boyd,* 67 Md. 32, 40, 41, 10 A. 315 (1887) ; *B. & O. R.R. Co. v. Boyd,* 63 Md. 325, 334-35 (1885).

Appellants are seeking punitive damages on both their conversion and wrongful dishonor counts. There can be no doubt in Maryland that under proper circumstances there can be punitive damages in a suit for conversion. In *McClung-Logan v. Thomas,* 226 Md. 136, 148, 172 A. 2d 494 (1961) this Court stated:

> "Punitive damages are properly a question for the jury in an action for wrongful conversion of personal property where the act of the defendant is accompanied with fraud, ill will,

2. Although all cases do not use the phrase "actual malice" when dealing with punitive damages in tort cases, they delineate the various components which when taken as a whole are in actuality its legal equivalent.

reclessness, wantonness, oppressiveness, wilful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury."

The tort of wrongful dishonor was recognized in Maryland in *Magness v. Equitable Trust Co.*, 176 Md. 528, 6 A. 2d 241 (1939). Although no decision in this State discusses whether punitive damages are recoverable in a wrongful dishonor case, we see no reason why under proper circumstances punitive damages should not be permitted. *See* 9 C.J.S. *Banks & Banking* § 365 b at 782 (1938); Case note, *Action for Wrongful Dishonor of Bank Check-Damages*, 4 *Md. L. Rev.* 395 (1940); Note, *Punitive Damages For Wrongful Dishonor of a Check*, 28 *Wash. & Lee L. Rev.* 357 (1971). This is true unless such an award is prohibited under the provisions of the Uniform Commercial Code, Maryland Code (1957, 1964 Repl. Vol.), Art. 95B. However, our disposition of this case obviates the necessity of determining the permissibility of punitive damages under the U.C.C.[3]

---

3. Damages for wrongful dishonor are covered by Uniform Commercial Code, Maryland Code (1957, 1964 Repl. Vol.), Art. 95B, § 4-402 which reads:

"§ 4-402. *Bank's Liability to Customer for Wrongful Dishonor.*

A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case."

While punitive damages are not mentioned under the express provision of that section, neither is there any language expressly precluding their recovery. It would seem therefore that the absence of such language when considered in conjunction with section 1-106 may indicate that punitive damages are not precluded. Section 1-106 reads as follows:

"The remedies provided by this article shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in this article or by other rule of law."

*See* Note, *Punitive Damages for Wrongful Dishonor of a Check*, 28 *Wash. & Lee L. Rev.* 357 (1971).

The issue before us, therefore, is whether there is sufficient evidence of actual malice or its legal equivalent that would permit an award of punitive damages. We agree with the trial court that there was not. Here, all the record indicates is that the bank, on a mistaken understanding of the law, attempted to satisfy out of a joint checking account the individual debt of Mr. Siegman created by his indorsement on a forged check. There is no evidence that the bank either converted his funds or refused to honor his checks out of evil motives intended to injure the Siegmans. Although it acted so as to damage the appellants, the bank was motivated by self interest rather than by a malicious desire to harm the appellants. However, the bank was careless and for this lack of care the appellants were compensated to the tune of $5,000. To justify an award of punitive damage ($15,000) the Siegmans were required to show that the conversion and wrongful dishonor of their check were accompanied by actions which manifest actual malice or its legal equivalent. The record is devoid of such proof. Rather than demonstrating such ill will, the evidence here shows the contrary. As an indication of this we note that subsequent to the events which resulted in this law suit, and prior to the resolution of the Howard County action, Equitable issued Siegman a Bank Americard and gave him a signature loan for home improvements in the amount of $1,000. Appellants attempt to paint a picture of Johnson, the branch manager, as a man who, acting to cover his error in clearing the forged check, by a series of malicious acts, attempted to focus his superiors' attention on the failings of the innocent Siegman rather than on his own misdeeds. We can not accept this portrait. Although the bank may not at all times act with charity for all, in this case it acted with malice toward none.

Appellants' final contention is that the trial court erred in granting the bank's motion for a directed verdict on the civil malicious prosecution count. We disagree. Initially, we point out that such suits are viewed with

disfavor in law and are to be carefully guarded against. *North Pt. Constr. Co. v. Sagner,* 185 Md. 200, 44 A. 2d 441 (1945). The necessary elements to maintain such an action in this State are set out in *Owens v. Graetzel,* 149 Md. 689, 695-96, 132 A. 265 (1926). There it is stated that the following must be shown to co-exist:

> "(1) the institution of the civil proceedings, (2) *without probable cause,* (3) *with malice;* (4) that the proceedings have terminated and in the plaintiff's favor, and (5) that damages were inflicted upon the plaintiff by arrest or imprisonment, by seizures of property or other special injury, which would not necessarily result in all suits prosecuted to recover for a like cause of action." (Emphasis added.)

As we have already determined that there was no evidence of malice present, a fortiori there can be no recovery for civil malicious prosecution. Additionally, appellants' claim must fail as there was no lack of probable cause to institute the bank's claim. The fact that an attorney acting in good faith in presenting and prosecuting a claim for his client had reasonable grounds to believe his client had a valid claim is sufficient to show probable cause on the part of the client. *North Pt. Constr. Co. v. Sagner, supra* at 208. To hold a defendant liable for civil malicious prosecution under the facts of this case would force all prospective plaintiffs to act at their peril when they rely on the advice of counsel. We refuse to require this.

> *Judgment affirmed. Costs to be paid by the appellants.*