Herbert S. DENENBERG

v.

AMERICAN FAMILY CORP. OF COLUMBUS, GA., American Family Life Assurance Co. of Columbus and John B. Amos and Anthony K. Dilimetin.

No. 82–1631.

United States District Court,
E.D. Pennsylvania.

June 29, 1983.

James E. Beasley, Philadelphia, Pa., for Denenberg.

Thomas N. O'Neill Jr., Philadelphia, Pa., for American Family Corp. of Columbus, American Family Life Assur. Co., Amos and Dilimetin.

Peter Hearn, Philadelphia, Pa., for Anthony K. Dilimetin.

David J. Griffith, Philadelphia, Pa., for American Family Corp. et al.

MEMORANDUM and ORDER

SHAPIRO, District Judge.

### I. INTRODUCTION

This lawsuit is the latest episode in the dispute between the plaintiff Herbert S. Denenberg, former professor and Insurance Commissioner of Pennsylvania and present media personality, and American Family Corp. of Columbus, Ga. and its subsidiary, American Family Life Assurance Co. of Columbus, ("AFC") over his publicized criticism of cancer care insurance sold by AFC and others. AFC sued plaintiff for defamation and conspiracy in New York but the suit was dismissed for lack of personal jurisdiction over him there. Denenberg was also a party defendant in a suit transferred from Maryland to Virginia which he claims defendants instigated and financed; that case was dismissed with prejudice by stipulation of counsel to that suit. Now Denenberg as plaintiff sues the former plaintiff in one suit, its Chief Executive Officer and Chairman of the Board, John B. Amos ("Amos") and its attorney, Anthony K. Dilimetin ("Dilimetin") and seeks actual and punitive damages for malicious prosecution, abuse of process, intentional infliction of emotional distress, civil conspiracy and def-

amation in bringing, publicizing, and negotiating settlement of the prior litigation.

Defendants AFC and Amos have moved to dismiss the complaint.[1] Defendant Dilimetin has joined in that motion. For the reasons discussed below the motion is granted in part and denied in part.[2]

## II. FACTS

The complaint alleges that Denenberg, as Insurance Commissioner of Pennsylvania, professor and reporter, criticized cancer care insurance, which is sold by defendant AFC and others, and expressed an opinion critical of such insurance on several occasions in testifying before committees of Congress and elsewhere. Denenberg claims that defendants commenced two lawsuits against him and defamed him in retaliation for this expression of opinion and in order to harass, intimidate and embarrass him.

The first lawsuit (the Kiplinger/Denenberg suit) was filed by AFC on January 2, 1980 in a New York state court but removed to the United States District Court for the Southern District of New York by Denenberg. This lawsuit arose out of an article which purported to quote Denenberg on the lack of value of cancer insurance policies. According to plaintiff's present complaint, the prior complaint alleged that Denenberg "caused harm to American Family Life Assurance Company of Columbus, and that Denenberg acted in conspiracy with others named as defendants in defaming and otherwise harming said company." Complaint, ¶ 16. The complaint in the Kiplinger/Denenberg lawsuit was dismissed as to Denenberg for lack of jurisdiction on March 18, 1981.

The second lawsuit (the ABC/Denenberg suit) was filed on February 3, 1981 in the United States District Court for the District of Maryland and subsequently transferred to the United States District Court for the Eastern District of Virginia. Although AFC was not the plaintiff in that suit,[3] Denenberg alleges that AFC, Amos and Dilimetin financed and directed the litigation. According to Denenberg, that complaint alleged that:

> Herbert S. Denenberg was employed by and acted as an advisor to the Select Committee on Aging of the House of Representatives of the United States of the Ninetieth Congress, that Herbert S. Denenberg was an agent, servant, and/or employee of ABC and its television program, 'World News Tonight,' and that Herbert S. Denenberg in said capacity conspired, confederated, and agreed to devise and carry out a scheme or plan to do harm to said Glenda C. Brown.

Complaint, ¶ 24. The complaint against Denenberg in the ABC/Denenberg lawsuit was dismissed, with prejudice, by stipulation of counsel, dated December 11, 1981.

Denenberg also alleges that on September 15, 1980, at a Philadelphia meeting initiated by Dilimetin regarding settlement of the Kiplinger/Denenberg lawsuit, Dilimetin made the following threatening and intimidating statements to Denenberg:

a. That American Family Life was considering 'suing' Denenberg in London and Japan (meaning that Denenberg would be forced to defend lawsuits in foreign countries);

---

1. Plaintiff has attached to his response to defendants' motion to dismiss affidavits and exhibits extraneous to the pleadings. If considered, these attachments would convert this motion into one for summary judgment. Fed. R.Civ.P. 12(b). However, the court will exclude plaintiff's attachments and consider defendants' motion solely on the pleadings, with the exception of Exhibit G, relating to the defamation Count (Count VII); plaintiff has requested leave to amend his complaint to incorporate this document.

2. Defendants have raised a choice of law issue which depends on which state bears the most significant relationship to the particular cause of action and must be addressed separately as to each count.

3. The caption was "Glenda C. Brown, Plaintiff v. American Broadcasting Companies, Inc., Roone Arledge, Av Westin, Margaret Osmer-McQuade, Herbert S. Denenberg, Kathleen T. Gardner, David L. Holton, Margaret Dixon, Val J. Halamandaris, and Robert Weiner." Complaint, ¶ 21.

b. That American Family Life knew that Denenberg had recently purchased a house (implying that American Family Life would place Plaintiff's assets in jeopardy);

c. That Denenberg would have to undergo 'educational treatment' from American Family Life to learn about the merits of cancer insurance;

d. That American Family Life had fully investigated Denenberg, knew everything about Denenberg and had even gone to the point of reading Denenberg's doctoral dissertation (implying that American Family Life would go to any lengths to cause harm to Denenberg);

e. That if Denenberg would agree to stop criticizing cancer insurance and American Family Life, the Kiplinger/Denenberg suit against him would be dismissed.

Complaint, ¶ 37.

### III. DISCUSSION

A. *Counts I and III—Malicious Prosecution and Wrongful Use of Civil Proceedings*

Although plaintiff has brought suit for both malicious prosecution and malicious or wrongful use of civil proceedings under separate counts, they constitute one cause of action and will be considered together.[4] The action for wrongful use of civil proceedings was brought under Pennsylvania law, pursuant to 42 Pa.C.S.A. § 8351, which is a codification of the prior common law of malicious prosecution, or malicious use of process, with certain modifications. *Blumenfeld v. RM Shoemaker Co.*, 286 Pa.Super. 540, 429 A.2d 654 (1981).

The first issue is the substantive law to be applied. Plaintiff asserts that Pennsylvania law governs while defendants contend that New York law should apply although either Maryland or Virginia law might be applicable. To resolve the choice of law issue, this court, sitting in a diversity action, must first determine whether a conflict exists between these states' laws and if so, apply the choice of law rules of the forum state, Pennsylvania. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania now applies a flexible choice of law rule that requires analysis of the policies and interests underlying the issue before the court and application of the law of the state with the most significant relationship to the cause of action. *Griffith v. United Airlines*, 416 Pa. 1, 203 A.2d 796 (1964).

After reviewing the laws of Pennsylvania, New York, Maryland and Virginia on malicious prosecution, the court concludes that a conflict of law does exist. The parties agree that if Pennsylvania law were to govern, then § 8351 would apply.[5] Section 8351 provides:

> Malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued. (Citations omitted).

*Blumenfeld v. RM Shoemaker Co.*, 286 Pa.Super. 540, 543, 429 A.2d 654, 656 n. 3 (1981), quoting, *Publix Drug Co. v. Breyer Ice Cream Co.*, 347 Pa. 346, 348–49, 32 A.2d 413, 415 (1943). *See also, Baird v. Aluminum Seal Co.*, 250 F.2d 595, 600 (3d Cir.1957).

---

4. The abuse of process count will be considered separately, since abuse of process constitutes a separate and distinct cause of action.

Decisions in this state and in other jurisdictions have drawn a distinction between actions for *abuse* of legal process and those for malicious prosecution, which, when founded on civil prosecutions, are usually described as *malicious use* of civil process. The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it: ... 'An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it ... [.] On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated ... other than its proper effect and execution' ....

5. Although both lawsuits were filed prior to the effective date of § 8351, the parties agree that the cause of action would not arise until the lawsuits were concluded because favorable termination of the lawsuit is an essential element of the tort; both cases were terminated after the effective date.

(a) Elements of action.—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

(b) Arrest or seizure of person or property not required.—The arrest or seizure of the person or property of the plaintiff shall not be a necessary element for an action brought pursuant to this subchapter.

New York, Maryland and Virginia laws, however, all require in addition to the two elements set forth in § 8351(a)(1) and (2) that the plaintiff establish an arrest of his person or a seizure of his property. *See, Williams v. Williams,* 23 N.Y.2d 592, 298 N.Y.S.2d 473, 246 N.E.2d 333 (1969); *Siegman v. Equitable Trust Co.,* 267 Md. 309, 297 A.2d 758 (1972); *Ayyildiz v. Kidd,* 220 Va. 1080, 266 S.E.2d 108 (1980). This element, which previously was an element of a cause of action for malicious prosecution in Pennsylvania as well, was abolished by the passage of § 8351. *Blumenfeld, supra,* 286 Pa.Super. at 545 n. 6, 429 A.2d 576. Because plaintiff has not alleged the existence of this "seizure" element, the complaint fails to state a cause of action under the law of New York, Maryland or Virginia.

Therefore, the court must determine which substantive law is properly applicable to this cause of action.[6]

We believe that the Supreme Court of Pennsylvania would adopt the view of the Restatement (Second) of Conflicts of Law (1977) which provides:

§ 155. Malicious Prosecution and Abuse of Process

The rights and liabilities of the parties for malicious prosecution or abuse of process are determined by the local law of the state where the proceeding complained of occurred, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

*See, Simkins Ind. Inc. v. Fuld & Co.,* 392 F.Supp. 126 (E.D.Pa.1975). Because the allegations of malicious prosecution relate to two lawsuits, each filed in a different forum, the choice of law issue must be analyzed separately for each action.

■ The Kiplinger/Denenberg lawsuit was commenced in New York. Although we agree with plaintiff that Pennsylvania has an interest in protecting its citizens from being subjected to the malicious use of the process of another state, this interest is not as weighty as that of New York in regulating the use of its process and in determining when its judicial system is maliciously used, especially if one of the defendants is an attorney licensed to practice there.[7] Otherwise, if a person in state A sues individuals in the other 49 states, whether that lawsuit constituted malicious use of state A's process would conceivably

6. As to the first lawsuit, plaintiff may have failed to state a cause of action under Pennsylvania as well as New York, Maryland and Virginia law because dismissal for lack of personal jurisdiction would not constitute a termination in plaintiff's favor. However, because the dismissal of the second suit with prejudice might have constituted a favorable termination, *cf. Baird, supra,* 250 F.2d at 601–02, it is still necessary to address the choice of law issue created by the divergence in state law with regard to the seizure requirement.

7. Because one of the defendants in this cause of action is an attorney, the court has also considered that an attorney who is guilty of conduct constituting malicious prosecution or abuse of process would be liable for disciplinary sanctions in the state in which he is licensed to practice. *See,* Code of Prof.Resp. DR. 7–102(A)(1). This is a relevant, although not controlling, factor on the choice of law issue.

be determined by 49 different legal standards. New York's seizure requirement is based on its judgment that public policy mandates free access to its courts and that this access should not be inhibited, even where a proceeding is initiated without probable cause, unless a person has been made to suffer a loss of his freedom or his property. That some of the conduct evidencing defendants' malicious intent occurred in Pennsylvania does not require application of Pennsylvania law in preference to New York. On balance, we feel that the interest of New York outweighs that of Pennsylvania.

■ The same analysis applies to the second lawsuit, although the issue is slightly more complicated because the proceeding was initiated in Maryland and later transferred to Virginia. The focus of a lawsuit for malicious prosecution is on the intent with which the prior lawsuit was commenced; Maryland appears to have the most significant relationship to that issue. If defendants were responsible for initiating the second suit, they have purposely availed themselves of Maryland's process and the law of Maryland should be used to determine whether that was proper. However, the court need not decide whether Maryland or Virginia law should govern because the law in both states is the same as the law of New York and requires seizure of property as an element of the tort.

Thus, the action for malicious prosecution is to be adjudicated under New York law as to the first lawsuit and under either Maryland or Virginia law as to the second. Because plaintiff has failed to plead the arrest/seizure element of a cause of action for malicious prosecution under the law of these states, Count I of plaintiff's complaint must be dismissed. Moreover, because Pennsylvania law does not apply to this cause of action, Count III, brought pursu-ant to 42 Pa.C.S.A. § 8351, must also be dismissed.

### B. *Count II—Abuse of Process*

■ The tort of abuse of process differs from malicious prosecution. Abuse of process focuses on the misuse of civil process, which is properly issued upon probable cause, to achieve some object other than the legitimate purpose for which it is designed, as opposed to the wrongful initiation of legal proceedings without probable cause. *See* fn. 4 *supra.* With regard to the Kiplinger/Denenberg lawsuit, Pennsylvania and New York have a relationship to the events of which plaintiff complains. But plaintiff has failed to state a cause of action against defendants under the laws of either jurisdiction.

■ To state a cause of action for abuse of process under Pennsylvania law, a plaintiff must allege an arrest or seizure of his property through the use of legal process for a purpose other than that for which it is designed. A plaintiff need not allege the prior termination of the lawsuit in his favor or the absence of probable cause as in the case of malicious prosecution. *Blumenfeld, supra,* 286 Pa.Super. at 543–44 n. 3, 429 A.2d at 656; *see also, Sheridan v. Fox,* 531 F.Supp. 151 (E.D.Pa.1982); *Ace v. Argonaut,* —— Pa.Super. ——, 452 A.2d 1384 (1982). The seizure requirement has remained intact for this tort although it was abolished in the statutory malicious prosecution action. *Blumenfeld, supra.* To establish a seizure, a person must incur a direct deprivation of property rather than the indirect consequences of a legal proceeding such as legal expenses, damage to reputation or loss of employment. *Argonaut, supra.* Because plaintiff has failed to allege an arrest or seizure of his property, plaintiff has failed to state a cause of action under Pennsylvania law.[8]

---

**8.** *But see, Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975); *Weisser v. Medical Care Systems, Inc.,* 432 F.Supp. 1292 (E.D.Pa.1977). In *Bell,* the Pennsylvania Supreme Court quoted the Restatement (First) of Torts § 674 (1938 ed.) on the elements of a common law cause of action for malicious prosecution in a footnote; the Restatement does not include arrest/seizure as a requirement. It has been argued from this that arrest/seizure is not an element of either malicious prosecution or abuse of process at com-

■ Under New York law, the elements of a cause of action for abuse of process are:

> ... First, there must be regularly issued process, civil or criminal, *compelling the performance or forebearance of some prescribed act.* Next, the person activating the process must be moved by a purpose to do harm without that which has been traditionally described as economic or social excuse or justification.... Lastly, defendant must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process. (Citations omitted) (emphasis supplied).

*Board of Education of Farmingdale v. Farmingdale Classroom Teachers Ass'n.,* 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1978).

On facts very similar, the New York Court of Appeals has held plaintiff failed to state a cause of action for abuse of process. In *Williams v. Williams,* 23 N.Y.2d 592, 298 N.Y.S.2d 473, 246 N.E.2d 333 (1969), plaintiff alleged that defendant filed a complaint circulated to other members of the trade that accused plaintiff of conspiring to misappropriate the company's trade secrets and assets. Plaintiff alleged that the prior action was instituted solely to publicize the complaint and ruin plaintiff's business reputation. The Court of Appeals stated:

> We agree with defendant that the complaint does not state a cause of action for abuse of process. 'The gist of the action for abuse of process lies in the improper use of process after it is issued.' ... Process is a 'direction or demand that the person to whom it is directed shall perform or refrain from the doing of some described act.' ... It follows that there

must be an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie. We find no such interference in this case. (Citations and footnotes omitted).

*Williams, supra,* 23 N.Y. at 596, 298 N.Y.S.2d at 476–77, 246 N.E.2d at 335. *See also, Krellman v. Livingston,* 64 A.D.2d 621, 406 N.Y.S.2d 881 (1978).

The holding in *Williams* was subsequently reaffirmed by the Court of Appeals in *Farmingdale.* In *Farmingdale,* the court held that the plaintiff stated a cause of action for abuse of process where it was alleged that defendant, motivated by an intent to harass and injure, caused the issuance of subpoenas (regularly issued process) requiring 87 teachers to appear at the same time so that plaintiff was forced to hire substitutes; the Court found this was sufficient to support an inference that process was perverted to inflict economic harm on the School District. But in so holding, the Court cited *Williams* with approval.[9]

■ Here, the only process caused to be issued by defendants was a complaint. The alleged abuse consists of publication of the contents of the pleadings and threats made by the attorney in connection with a proposed settlement of the action. No arrest or seizure of property is alleged. In light of *Williams,* we consider plaintiff's allegations insufficient to state a cause of action under New York law.

■ With regard to the ABC/Denenberg suit, the same result would obtain under New York and Pennsylvania law if they were applicable. However, for the same reasons stated with regard to the ma-

---

mon law and so the statutory removal of the requirement for malicious prosecution does not mean it did or does exist for an abuse of prosecution. But this reference to the Restatement was in the context of a discussion about means available to combat abuses of judicial process. The court was considering whether allowing appeals from denials of class certification would encourage unmeritorious class actions. The elements of a cause of action for either malicious use or abuse of process was not the issue before the court; subsequent decisions in

*Blumenfeld, Sheridan* and *Argonaut* make clear that arrest/seizure is still an element of this tort in Pennsylvania.

9. The Court stated: "In *Williams v. Williams* ..., we held that a complaint in another action which had been mailed to members of the trade was not process capable of being abused." *Farmingdale, supra,* 38 N.Y.2d 397, 380 N.Y.S.2d at 642, 343 N.E.2d at 282.

licious prosecution count, either Maryland or Virginia bear the most significant relationship to the cause of action for abuse of process arising out of the second lawsuit; therefore, the court must consider the law of those states.

Maryland law requires as an element of the tort an improper arrest or seizure, *Herring v. Citizen's Bank & Trust Co.,* 21 Md.App. 517, 321 A.2d 182 (1974), or other "special damage," *Wesko v. G.E.M., Inc.,* 272 Md. 192, 321 A.2d 529, 531 n. 1 (1974). Plaintiff relies on *Wood v. Palmer Ford, Inc.,* 47 Md.App. 692, 425 A.2d 671 (1981), in which the defendant had instituted criminal charges resulting in the arrest of the plaintiff. The court in *Wood* quotes from Prosser, Law of Torts (4th ed. 1971) for the proposition that the tort of abuse of process involves a form of extortion. 425 A.2d at 680. Prosser further states:

> The cases have involved such extortion by means of attachment, execution, garnishment, or sequestration proceedings, or arrest of the person, or criminal prosecution, or even such infrequent cases as the use of a subpoena for the collection of a debt.... Some actual damage is necessary to the tort, but any completed use of the process which involves an interference with the plaintiff's rights will necessarily involve such damage.

Prosser at 857–58 (footnotes omitted). Here the plaintiff has not alleged use of either these or other forms of process from which injury to the person or his property might be presumed to flow; nor has he alleged any other injury. *Cf., Krashes v. White,* 275 Md. 549, 341 A.2d 798 (1975) (arrest is not essential element of action for abuse of criminal process although issuance of some form of criminal process is).

Plaintiff has also failed to allege an improper act or misuse of the process *after* the complaint was issued. *Wood, supra; Herring, supra.* Unlike the first lawsuit where the alleged threats made after the complaint was served might be considered abuse, plaintiff alleges no such conduct after the second suit was filed. Accordingly, plaintiff has failed to state a cause of action

under Maryland law. For the same reason, it is also clear there would be no action for abuse of process under Virginia law; *Glidewell v. Murray-Lacy & Co.,* 124 Va. 563, 98 S.E. 665 (1919); *Mullins v. Sanders,* 189 Va. 624, 54 S.E.2d 116 (1949) (two essential elements of tort of abuse of process are ulterior motive and an act in the use of the process not proper in the regular prosecution of the proceeding, amounting to its perversion to some unlawful process). This Count must be dismissed.

### C. Count IV—Intentional Infliction of Emotional Distress

The parties do not contend that a conflict exists between the law of Pennsylvania and the laws of New York, Maryland and Virginia as to this cause of action. Therefore, the law of Pennsylvania applies.

The elements of the tort of intentional infliction of emotional distress in Pennsylvania are: (1) the conduct must be extreme and outrageous, (2) the conduct must be intentional or reckless, (3) it must cause emotional distress, and (4) the distress must be severe. *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273 (3d Cir.1979). The key issue raised by defendant's motion is whether plaintiff has alleged conduct that is sufficiently outrageous and extreme to state a cause of action.

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Restatement (Second) of Torts, § 46, comment d.

*Id.* The conduct alleged here is "the filing of two lawsuits against an innocent Pennsylvania citizen, accompanied by psychological and financial coercion ... and public announcements about Denenberg's alleged misdeeds through press releases." Plaintiff's Memorandum in Opposition to Defendant's Motion at 21.

In assessing a claim for intentional infliction of emotional distress, the

court must first determine as a matter of law whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct. If so, the matter is then left to the jury to find the facts and reach its own characterization of the conduct. *Chuy, supra,* 595 F.2d at 1274. The mere filing of the two lawsuits that plaintiff was forced to defend in other states, even if they were entirely baseless, does not, as a matter of law, constitute extreme or outrageous conduct. *Rose v. Wissinger,* 294 Pa. Super. 265, 439 A.2d 1193 (1982); *cf., Martin v. Little Brown & Co.,* 304 Pa.Super. 424, 450 A.2d 984 (1981) (threat of legal counterclaim, even if entirely lacking in merit, does not constitute outrageous conduct). Nor do the statements allegedly made by attorney Dilimetin, even if they may be considered implied threats as plaintiff alleges, so exceed the bounds of decency that they render defendants' conduct extreme and outrageous. *Jones v. Nissenbaum, Rudolph & Seidner,* 244 Pa.Super. 377, 368 A.2d 770 (1976) (statements by creditors to plaintiffs that their house was to be sold and that they had 30 days to get their junk out not extreme and outrageous within the context of § 46 even where plaintiffs alleged the creditors knew they could not complete execution proceedings).

Defendants' press release concerning the Kiplinger/Denenberg suit would be a more difficult problem. The contents of this press release were not set forth in the pleadings but plaintiff has moved to amend his complaint to include the press release and attached a copy of it to his response to defendants' motion. In *Chuy,* the Third Circuit held that the plaintiff had proved outrageous conduct where there was "a statement to the press by a physician assumed to know the facts that a person is suffering from a potentially fatal disease, even though the physician was aware that the person was not stricken with that condition." 595 F.2d at 1274. *See also,* Restatement (Second) of Torts § 46, Illustration 1

(false statement that one's spouse is seriously injured extreme and outrageous).

But here, the press release stated that American Family Life had filed a $5 million libel action against several persons, including Denenberg. Denenberg was referred to as a "noted outspoken and self styled consumer advocate." Denenberg and the other defendants in that action were accused of being responsible for an article that was "false and defamatory," and contained malicious, untrue and misleading statements in order to reap considerable financial gain and cast American Family in a "diabolical, fiendish and megalomaniacal light." These statements were quotations from the complaint filed in the Kiplinger/Denenberg suit. They are not, in the context of the obvious dispute between these parties, so outrageous as to be beyond all possible bounds of decency. Accordingly, Count IV will be dismissed for failure to state a cause of action upon which relief can be granted.

### D. *Count V—Civil Conspiracy*

Plaintiff alleges that a conspiracy existed "for the sole purpose of oppression, harassment, intimidation, embarrassment, coercion, extortion, and otherwise to inflict financial injury, professional injury, and emotional distress upon plaintiff Denenberg, and to attempt to silence him, and deprive him from pursuing his right as an American citizen to freedom of speech under the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania." Complaint, ¶ 66. This alleged conspiracy was carried out in at least four states,[10] although it is not clear where plaintiff alleges it was entered.

Neither New York nor Virginia recognize an independent tort of civil conspiracy. *Powell v. Kopman,* 511 F.Supp. 700, 704 (S.D.N.Y.1981); *Stauffer v. Fredericksburg Ramada, Inc.,* 411 F.Supp. 1136 (D.Va.1976). Pennsylvania and Maryland do recognize such a cause of action.

---

**10.** Lawsuits were pending in New York, Maryland and Virginia and Dilimetin allegedly threatened and/or intimidated Denenberg in Pennsylvania. The defamation is alleged to have occurred nationwide.

*Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979); *Green v. Washington Suburban Sanitary Comm'n.,* 259 Md. 206, 269 A.2d 815 (1970). Some of the acts in furtherance of the conspiracy are alleged to have occurred in Pennsylvania where its effects would have been suffered by a domiciliary of Pennsylvania. Plaintiff's domicile has a strong interest in protecting its citizens against injury from civil conspiracies, so that Pennsylvania law should apply.

■ To state a cause of action for civil conspiracy under Pennsylvania law, a plaintiff must allege that "two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Thompson, supra,* 488 Pa. at 211, 412 A.2d at 472.[11] Here, plaintiff alleges a conspiracy among the three named defendants. However, Amos, Chairman of the Board and Chief Executive Director of AFC, could not conspire with AFC when acting in that capacity. *Id.* at 212–213, 412 A.2d at 473. Dilimetin, attorney for AFC, could conspire with Amos or AFC only if he acted solely to injure plaintiff rather than as an attorney seeking to advance the interests of AFC. *Id.* at 211, 412 A.2d at 472; *see also, Jagielski v. Package Machine Co.,* 489 F.Supp. 232 (E.D.Pa.1980); *Realco Services Inc. v. Holt,* 479 F.Supp. 880 (E.D.Pa.1979); *cf., Johnston v. Baker,* 445 F.2d 424 (3d Cir.1971).

■ The acts that plaintiff alleges were performed by Dilimetin in furtherance of a conspiracy are alleged to have been performed by him as agent for defendants AFC and Amos. Complaint, ¶¶ 37 and 72. But plaintiff also alleges that Dilimetin acted "on his own behalf." Complaint, ¶ 7. On a motion to dismiss, the court must construe the pleadings liberally in favor of plaintiff; the motion may not be granted unless it is clear that plaintiff can prove no set of facts at trial to support his cause of action. Because the pleadings are unclear,

the court is reluctant to hold that plaintiff has failed to state a cause of action. Accordingly, defendants' motion to dismiss this Count is denied without prejudice to renewal as a motion for summary judgment at the conclusion of discovery or for a directed verdict at trial.

### E. Count VI—Defamation

■ In choosing which jurisdiction's law is to be applied on this Count, the place or places of publication of the allegedly defamatory statements and the place or places of injury to plaintiff's reputation must be considered. Generally, the law of the jurisdiction where the defamatory statements were published is applied. *See,* Restatement (Second) Conflicts of Law (1971) § 149. But here, plaintiff alleges that the statements were published to a national audience. Therefore, the court will look to the law of the state of plaintiff's domicile. Restatement, *supra* § 150. As a resident and media personality in Pennsylvania, Denenberg would suffer injury to his reputation in Pennsylvania if defendants published any defamatory statements here. Pennsylvania has a significant interest in protecting the reputation of a domiciliary. *Fitzpatrick v. Milky Way Productions, Inc.,* 537 F.Supp. 165 (E.D.Pa. 1982). Nothing in the record convinces the court that any other state bears a more significant relationship to this cause of action. Accordingly, Pennsylvania law will apply.

■ Plaintiff claims that defendants published defamatory accounts of the two lawsuits filed against Denenberg and others. Plaintiff has alleged that defendants published "Media Wire" accounts to "city" and "business" desks of newspapers. Complaint, ¶ 76. Because plaintiff has not alleged the contents of the publications or to whom they were made, defendants have moved to dismiss this Count. However, plaintiff has attached as Exhibit G to his

---

**11.** Because Count VI is not dismissed without leave to amend, there could be a conspiracy to defame. However, if the defamation count should fail there is a question whether a con-

spiracy count can remain in the absence of any unlawful act. Recovery then would be predicated solely on proof of intent to do some act not in itself unlawful by unlawful means.

memorandum in opposition to defendants' motion a copy of a media wire account sent by defendants and requested leave to amend the complaint to incorporate this document. Leave to amend will be granted without determining whether the amended complaint states a cause of action for defamation. Whether the statements are capable of defamatory meaning as to this plaintiff, 42 Pa.C.S.A. § 8343(a), or are of a privileged character, 42 Pa.C.S.A. § 8343(b) will not be determined on this motion to amend.[12]

### F. Count VII—Exemplary Damages

Plaintiff has brought a separate Count to recover exemplary damages. This Count will be dismissed; if plaintiff recovers on the remaining Counts, he will recover such damages as are appropriate. In amending his complaint, plaintiff may include a prayer for exemplary damages in the form permitted by Local Rule 30.

### IV. CONCLUSION

Defendants' motion is granted in part and denied in part. Counts I, II, III, IV and VII of plaintiff's complaint are dismissed. The motion is denied as to Counts V and VI with leave to amend in accordance with this Memorandum. However, the court cannot help but wonder if when this litigation is terminated there will be yet another lawsuit in this or some other forum concerning the *bona fides* of this litigation. Perhaps it can be hoped that at some point the parties will find it sufficient to debate the value of cancer care insurance in the forum of public opinion rather than the courts of law all over the nation.[13]

---

**12.** The "Media Wire" accounts appear to be summaries and quotations from the complaint in the Kiplinger/Denenberg suit. Although Pennsylvania law affords absolute immunity for defamatory statements contained in pleadings, if relevant to the proceeding in which they are made, *Greenberg v. Aetna Ins. Co.,* 427 Pa. 511, 235 A.2d 576 (1967), *cert. denied,* 392 U.S. 907, 88 S.Ct. 2063, 20 L.Ed.2d 1366 (1968), statements about them made outside the judicial proceedings are subject to a qualified privilege only; the burden is on the plaintiff to show that defendant abused its privilege. *Medico v. Time, Inc.,* 643 F.2d 134 (3d Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981). "Pennsylvania recognizes two forms of 'abuse': the account of an official report may fail to be fair and accurate, as when the publisher overly embellishes the account, ... or the defamatory material may be published for the sole purpose of causing harm to the person defamed." *Id.* at 146 (citations omitted); *Bind-*

er v. Triangle Pub. Inc., 442 Pa. 319, 275 A.2d 53 (1971); *Barto v. Felix,* 250 Pa.Super. 262, 378 A.2d 927 (1977); *see also,* Restatement (Second) of Torts § 611 (1977) (privilege available to anyone who makes a report to pass on information available to the general public). Thus, plaintiff may prevail only if he can establish such abuse.

**13.** As noted by the Court of Appeals for the Third Circuit in *Baird, supra,* 250 F.2d at 602, ... the remarks of Mr. Justice Gordon in *Muldoon v. Rickey,* 1883, 103 Pa. 110, 113, are peculiarly pertinent: '... expenses, loss of time and often loss of credit aris[e] from the ordinary forms of legal controversy. All are troublesome, expensive and often ruinous, and if for such damages the action of case could be maintained, there would be no end to litigation for the conclusion of one suit would be but the beginning of another.