David H. ELLIOTT, Plaintiff,

v.

Victoria M. EVANS, et al., Defendants.

Civil No. K–95–1699.

United States District Court, D. Maryland.

Oct. 25, 1996.

Edward J. Birrane and Cynthia M. Dietz, Towson, MD, for Plaintiff.

Neal M. Brown, Mark W. Conforti, and Shaw & Brown, Towson, MD, for Defendant Victoria M. Evans.

Mark I. Cantor, Owings Mills, MD, for Defendant Nationwide Mutual Insurance Company.

FRANK A. KAUFMAN, Senior District Judge.

On January 7, 1992, Elliott, the plaintiff, was driving in Baltimore City a truck owned by his employee. The truck and the employee were not insured. While driving the vehicle Elliott was involved in an accident with a vehicle owned by the Mayor and City Council of Baltimore City. One of the defendants, Ms. Evans, was a passenger in the latter vehicle. Immediately following the accident, Evans walked to a police substation to request that the Baltimore City Police respond to the accident. Thereafter, police responded to the accident, surmised no one was hurt, determined that neither party would be charged, and so reported.

As a result of the accident, Evans sought medical treatment which cost in excess of $20,000. Evans; contending that Elliott had been negligent and was an uninsured motorist, pursued a claim for uninsured motorist coverage under her personal automobile policy with her insurer, Nationwide, the second defendant herein. After payment of Evans's claim Nationwide filed a subrogation suit against Elliott, but dropped that suit shortly after Elliott secured representation to defend against Nationwide's claims.

Elliott, a citizen of Delaware, now brings this suit alleging the defendants engaged in tortious conduct in their prosecution of the

aforementioned subrogation claim. Defendant Evans is a citizen of Maryland. Defendant Nationwide is incorporated in Ohio and has its principal place of business in Columbus, Ohio. Diversity jurisdiction is present pursuant to 28 U.S.C. § 1332. Elliott details numerous oversights and foibles in Nationwide's investigation of Evans's claim. In investigating the accident and determining fault, Nationwide's claims adjuster chose not to interview the drivers of either car or the police officer who responded to the accident, but rather only interviewed Evans, although she was not even listed as an occupant of the city vehicle in the police report.[1] Further, the claims adjuster failed to evaluate the damage to the vehicles involved in the accident.[2] With regard to Ms. Evans's injuries, there is substantial evidence in the record that the origin of Evans's discomfort following the 1992 accident is disputable, on the basis of an extensive medical history.[3] Finally, Nationwide's exposure with regard to Evans's claim was questionable. Nationwide and Elliott dispute whether or not Baltimore City was required to carry uninsured motorist coverage for the vehicle in which Evans rode on the day of the accident, and consequently whether or not Evans should have turned to Baltimore City for compensation for her injuries. That issue does not appear to have been resolved by Nationwide before it chose to honor Evans's claim.[4]

Elliott's Complaint consists of five counts: Count I alleges intentional misrepresentation on the part of both Evans and Nationwide; Count II alleges a civil conspiracy between Evans and Nationwide; Count III alleges negligent misrepresentation on the part of Nationwide; Count IV alleges malicious use of process on the part of Nationwide; and Count V alleges Nationwide committed defamation. The nature and relevant facts are not in dispute. Both defendants have moved for summary judgment. For the reasons set forth herein those motions will be granted.

Summary judgment is appropriate where "there is no genuine issue of material fact and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Pro. 56(c). The non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1129 (4th Cir.1987). The non-movant, however, in resisting summary judgment must "go beyond the pleadings and by [its] own affidavits.... depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court, in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), explained:

> "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...."

477 U.S. at 252, 106 S.Ct. at 2512.

*Count I: Fraud and Intentional Misrepresentation*

■ Elliott alleges that Evans made a fraudulent claim under her uninsured motor-

---

1. Pl.['s] Mem. in Opp'n to Defs['] Mot.Summ.J., Ex. C.

2. Woods Dep. at 73–76.

3. After the 1992 accident, Evans complained of neck and shoulder pain, migraine headaches, jaw discomfort, dizziness, and tingling pain in her hands, wrists, elbows and arms. (Pl.['s] Mem. in Opp'n to Defs['] Mot.Summ.J., Ex. E; Evans Dep. at 88.) However, prior to the 1992 accident, Evan's medical history includes: surgical correction of an overbite in 1973 (Evans Dep. at 90); whiplash as a result of a car accident in the late 1970's (Evans Dep. at 95–96); surgery to correct a deviated septum in the sinus area in

May/June, 1987 (Evans Dep. at 91); surgical jaw reconstruction in December, 1987 to correct lingering pain in the face and cheekbones, complications from the 1973 surgery, which involved a bone graft from the left hip and titanium plates to seal the jaw intact (Evans Dep. at 90–91); work-related slip and fall accident in 1989 which resulted in injuries to her left hip and back (Evans Dep. at 85–86); and treatment for back pain in December, 1991 (Pl.['s] Mem. in Opp'n to Defs['] Mot.Summ.J., Ex. E at unnumbered page 2).

4. Woods Dep. at 50–52.

ist coverage with Nationwide, and that Evans and Defendant Nationwide, acting in concert, filed an intentionally false subrogation suit making representations which Elliott relied on to his detriment.

In Maryland to prevail under Count I, plaintiff must prove that:

(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Alleco v. Weinberg Foundation,* 340 Md. 176, 195, 665 A.2d 1038 (1995) (citations omitted). *See also Everett v. Baltimore Gas & Electric,* 307 Md. 286, 300, 513 A.2d 882 (1986); *Martens Chevrolet v. Seney,* 292 Md. 328, 333, 439 A.2d 534 (1982).

Elliott's claims do not satisfy the elements of fraud or of intentional misrepresentation. Principally, Elliott has no evidence that he relied on defendant's misrepresentations to his detriment. To place reliance on a representation, Elliott would have had to believe those representations were true. *See, e.g., Suburban Properties Mgmt., Inc. v. Johnson,* 236 Md. 455, 460, 204 A.2d 326 (1964). To the contrary, Elliott immediately contacted an attorney to defend against the subrogation suit which he characterizes as the intentional misrepresentation upon which his claim of fraud is based. While defending the subrogation suit may well have inconvenienced Elliott, the actions which he took in his defense do not constitute reliance upon misrepresentations. Further, by defending against the subrogation suit Elliott was acting to prevent harm to himself, rather than acting to his detriment.

*Count II: Civil Conspiracy*

■ In Count II of his complaint, Elliott contends that Nationwide and Evans con-

spired to enable Evans to collect money on her questionable uninsured motorist claim, with the understanding that Evans and Nationwide would then work together to recoup that expense to Nationwide by filing a suspect subrogation claim against Elliott.

Under Maryland law, "civil conspiracy occurs when two or more persons agree to accomplish a wrongful act or agree to use unlawful means to accomplish a lawful act, with the acts of the conspirators resulting in damage to the plaintiff." *Markey v. Wolf,* 92 Md.App. 137, 172, 607 A.2d 82 (1992). *See also Van Royen v. Lacey,* 262 Md. 94, 97–98, 277 A.2d 13 (1971); *Green v. Washington Suburban Sanitary Commission et al.,* 259 Md. 206, 221, 269 A.2d 815 (1970). Plaintiff's civil conspiracy claim fails herein because he has presented no evidence that Evans and Nationwide agreed to work together regarding the subrogation suit brought by Nationwide against him, or that Nationwide and Evans had any other independent plan to accomplish an unlawful act which damaged Elliott.[5] Plaintiff has proffered no evidence that Nationwide's negligence in filing its subrogation suit is linked to an agreement between Nationwide and Evans. Plaintiff's mere suspicions that the defendants acted in concert to defraud him is not enough for this Court to allow plaintiff's civil conspiracy claim to proceed to trial.

*Count III: Negligent Misrepresentation*

■ Negligent misrepresentation requires proof of the following elements:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

---

5. Elliott Dep. at 64–65 (Elliott stated that he has no specific knowledge of anyone from Nationwide acting together with Victoria Evans to do anything that was illegal). *See also* Evans Dep.

at 143 (denial by Evans of any discussions with Nationwide regarding its subrogation suit against Elliott).

*Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 337, 439 A.2d 534 (1982).

Plaintiff's negligent misrepresentation allegation cannot prevail for the reasons discussed *supra,* with regard to intentional misrepresentation, the plaintiff cannot establish that he relied on any of the misrepresentations upon which he bases his claim.

### Count IV: Malicious Use of Process

Plaintiff argues that Nationwide's subrogation suit constituted the malicious use of process. In order to encourage parties freely to enter the courts to enforce their rights and seek redress, "[a]ctions for the malicious prosecution of civil suits are not encouraged." *Owens v. Graetzel,* 149 Md. 689, 694, 132 A. 265 (1926). In order to bring a suit based on the malicious use of process, plaintiffs must establish each of the following elements:

(1) the institution of the civil proceedings, (2) without probable cause, (3) with malice; (4) that the proceedings have terminated and in the plaintiff's favor, and (5) that damages were inflicted upon the plaintiff by arrest or imprisonment, by seizures of property or other special injury, which would not necessarily result in all suits prosecuted to recover for a like cause of action.

*Siegman v. Equitable Trust Co.,* 267 Md. 309, 317, 297 A.2d 758 (1972). *See also Wood v. Palmer Ford, Inc.,* 47 Md.App. 692, 705, 425 A.2d 671 (1981), *aff'd in part and rev'd in part,* 298 Md. 484, 471 A.2d 297 (1984); *Berman v. Karvounis,* 308 Md. 259, 266, 518 A.2d 726 (1987).

■ As with the other claims at issue in this suit, Elliott has not proffered evidence to establish each of the aforementioned elements. In particular, Elliott fails sufficiently to proffer damages which can serve as a basis for a malicious use of process claim. Elliott offers that due to Nationwide's subrogation suit he incurred legal fees, was embarrassed at a family gathering, suffered psychological and emotional injuries as a result of the stress caused by the conduct of Nationwide for which he did not seek treatment, and lost business as a result of the time he

had to spend defending against the subrogation suit.

In *North Point Construction Co. v. Sagner,* 185 Md. 200, 44 A.2d 441 (1945), Maryland's highest court has stated clearly, "[t]he mere expense and annoyance of defending a civil action is not a sufficient special damage or injury to sustain an action for malicious prosecution." *Id.,* 185 Md. at 207, 44 A.2d 441. *See also Owens,* 149 Md. at 694, 132 A. 265 (noting the common law rule which allowed an action for malicious prosecution to lie where there are no other damages than the expense of having made a defense in the initial case has been overruled by statute allowing a defendant in a suit maliciously prosecuted to receive in that case not only the defendant's costs but also damages upon prevailing). Elliott's expenses in defending the subrogation suit brought against him by Nationwide, therefore, may not serve as the special damages which he must establish in a subsequent malicious use of process suit.

Further, Elliott's emotional and psychological injuries, for which he has not sought medical treatment and which have not been tied to any adverse physical condition, cannot serve as the basis for special damages. Otherwise, the stress associated with any lawsuit would satisfy the special damages element of the tort of malicious use of process. That would just about be a complete contravention of the requirement that special damages are those "which would not necessarily result in all suits prosecuted to recover for a like cause of action." *Siegman,* 267 Md. at 317, 297 A.2d 758.

■ Finally, Elliott, a self-employed general contractor, argues that he has lost business worth approximately $2,800 as a result of the time which it took him to defend against Nationwide's subrogation suit.[6] However, Elliott has proffered no evidence for this Court to consider to support his estimation of loss, and has detailed no specific contract or business which he would have secured but for his subrogation suit defense. As is the case with Elliott's emotional damages, such a vague assertion of economic damages does not satisfy the requirement for

---

6. Pl.['s] Mem. in Opp'n to Defs['] Mot.Summ.J., Ex. J, Answers to Interrogs., No. 23.

special damages. *See, e.g., Herring, et al. v. Citizens Bank & Trust Co.,* 21 Md.App. 517, 548–49, 321 A.2d 182 (1974) (harm to credit and business reputation which accompany suits to enforce unpaid notes are the kind of harm sustained by anyone placed in similar straits by a similar civil suit and therefore not "special").

*Count V: Defamation*

Lastly, Elliott contends that Nationwide defamed him during a telephone conference between Elliott, Delaware Insurance Department Deputy James Thompson, and an unnamed Nationwide attorney, and in Nationwide's subrogation complaint. "To recover for defamation, a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm." *Rosenberg v. Helinski,* 328 Md. 664, 675, 616 A.2d 866 (1992), *cert. denied,* 509 U.S. 924, 113 S.Ct. 3041, 125 L.Ed.2d 727 (1993). In this case Elliott has not even proffered or substantiated evidence that Nationwide made any defamatory statement.

■ With regard to the telephone conference, Elliott states that Nationwide's attorney was "arrogant" and "disrespectful" during the telephone call.[7] In addition, Elliott contends that the Nationwide attorney indicated a disbelief that Elliott was the former Delaware Insurance Commissioner, stating "this person claims he was a former insurance commissioner of Delaware and I've never heard tell of him."[8] While the unnamed Nationwide attorney may have acted in an unprofessional or inappropriate manner, the attorney made no statement which was defamatory and false.

■ Further, statements made in a complaint to institute a judicial proceeding are privileged and do not expose the complaining party to a meritorious defamation suit. *See Odyniec, et al. v. Schneider,* 322 Md. 520, 526–27, 588 A.2d 786 (1991). "This absolute privilege protects the person publishing the

defamatory statement from liability even if his purpose or motive was malicious, he knew that the statement was false, or his conduct was otherwise unreasonable.... Absolute privilege extends not only to statements made in court, but also to statements contained in pleadings, affidavits or other documents filed in a judicial proceeding or directly related to the case." *Odyniec,* 322 Md. at 527, 588 A.2d 786 (citations omitted).

## CONCLUSION

For the reasons set forth *supra,* plaintiff has failed to establish the elements of any of his claims. Therefore, this Court hereby grants the summary judgment motions of the two defendants with respect to all claims asserted by plaintiff against them in this litigation. Accordingly, judgment will be entered for the defendants in a separate Judgment Order of even date herewith.

---

7. Pl.['s] Mem. in Opp'n to Defs['] Mot.Summ.J., Ex. J, Answers to Interrogs., No. 11.

