Arthur Alan WOLK

v.

TELEDYNE INDUSTRIES, INC., a.k.a., TDY Industries, Teledyne Technologies, Inc., Teledyne Continental Motors, Inc., Lord Bissell & Brook, Thomas J. Strueber and David G. Greene.

Civil Action No. 03–5693.

United States District Court, E.D. Pennsylvania.

March 30, 2007.

Alan Mattioni, The Wolk Law Firm, Matthew Kristopher Clarke, Wolk & Genter, Paul R. Rosen, Spector Gadon & Rosen, P.C., Peter Von Mehren, Philadelphia, PA, Geoffrey Hazard, Swarthmore, PA, for Arthur Alan Wolk.

Paul J. Greco, Conrad O'Brien Gellman & Rohn, P.C., Philadelphia, PA, Stephen R. Ginger, Teledyne Continental Motors, Inc., Mobile, AL, for Teledyne Industries, Inc., a.k.a., TDY Industries, Teledyne Technologies, Inc., Teledyne Continental Motors, Inc., Lord Bissell & Brook, Thomas J. Strueber and David G. Greene.

## MEMORANDUM & ORDER

SHAPIRO, Senior District Judge.

Plaintiff, Arthur Wolk, Esq. ("Wolk"), filed an action alleging defamation and various other intentional torts against numerous defendants including the law firm Lord Bissel & Brook ("LB & B") and two of its attorneys, Thomas Strueber, Esq. ("Strueber") and David Greene, Esq. ("Greene"). After defendants filed motions to dismiss for lack of personal jurisdiction, Wolk filed his "Notice of Voluntary Dismissal of All Claims Against All Defendants Who Have Not Served Plaintiff with an Answer or Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 41(a)(1)" (paper # 150). Two sets of defendants now remain: the Teledyne entities and LB & B, Strueber and Greene. Before the court is a joint Motion to Dismiss and in the Alternative for Summary Judgment filed by LL & B, Strueber, and Greene.

## I. Background

### A. The *Taylor* Action

This action arises in part from a prior wrongful death action before the Honorable Julie E. Carnes, United States District Court for the Northern District of Georgia, Atlanta Division. *Taylor v. Teledyne,* 338 F.Supp.2d 1323 (N.D.Ga.2004). Wolk was lead counsel for the plaintiffs' estates [1]; Teledyne was the defendant. The plaintiffs alleged an engine malfunction caused the airplane accident that killed their decedents. *Taylor v. Teledyne Technologies, Inc.,* 338 F.Supp.2d 1323, 1325 (N.D.Ga.2004). Discovery in *Taylor* was "extremely contentious;" Judge Carnes issued a seventy-one page Omnibus Discovery Order on September 30, 2002. *Id.* at 1325–26. The Omnibus Discovery Order sanctioned Wolk because he "had intentionally disobeyed the orders and directives of the Court and the federal rules governing discovery." *Id.* at 1326.

Wolk then filed a motion for reconsideration "as to the critical comments directed at him"; he claimed he had been unfairly singled him out by name and denied his personal involvement in any discovery violations that had occurred. *Id.* Judge

---

1. In the *Taylor* action, the estates of the deceased Marc E. Taylor and Robert G. Dodson were plaintiffs. Wolk initially represented only the Taylor Estate, but eventually he also represented the Dodson Estate. *Taylor v. Teledyne Technologies, Inc.,* 338 F.Supp.2d 1323, 1325 (N.D.Ga.2004).

Carnes "had reasonably understood Wolk to be the attorney responsible for any discovery violations .... [but] given the intensity and seeming earnestness of Wolk's assertions that he was not responsible for or aware of any discovery violations," Judge Carnes, *sua sponte*, on October 20, 2002, ordered that the Omnibus Discovery Order be placed under seal until such time as the court deemed it appropriate to revisit the matter. *Id.* at 1326.

When the parties later represented to Judge Carnes that the case could be settled, the judge granted Wolk's request to revoke and vacate the Omnibus Discovery Order; the defendants agreed with her decision. *Id.* On May 20, 2003, Judge Carnes issued a "Protective Order" revoking and vacating the Omnibus Discovery Order and directing that no one should publicize or disclose it:

> The Order of September 30, 2002, shall be marked not for publication *nunc pro tunc*, sealed, and shall not be disclosed without further order of this Court.
>
> All proceedings, including transcripts of telephone conversations, court orders, and correspondence in connection with the Order of September 30, 2002, or relating thereto, are sealed, at the request of counsel, and shall not be disclosed without further order of this Court.
>
> The parties, their representatives, successors, insurers, and all others are directed not to publicize the Order of September 30, 2002, to destroy all copies, and to obtain the return or destruction of all copies of the said Order.
>
> Should the Order of September 30, 2002, in violation of this Order, be provided to any other court, a copy of this Order shall be sufficient to indicate to that court that it be disregarded in its entirety.

*Id.* at 1331. The next day, May 21, 2003, Wolk informed Judge Carnes that *Taylor* had settled.

## B. This Action

Less than four months after Judge Carnes issued the Protective Order revoking and vacating the sealed Omnibus Discovery Order, Wolk filed a defamation action in Pennsylvania state court against defendants for publishing the Omnibus Discovery Order. After Wolk named the Israeli Aircraft entities a defendant in his fourth amended complaint, the defamation action was removed by the defendants to the Eastern District of Pennsylvania on October 14, 2003.

Wolk's Amended Complaint ("complaint"), the operative complaint in this action, named over two dozen defendants and alleged conspiratorial conduct aimed at Wolk that predated Judge Carnes' Omnibus Discovery Order. Wolk asserted that because he had been a successful advocate, the "highest circles of the aviation defense bar .... along with the major aviation insurers and reinsurers .... [and] the aviation industry .... [decided] that the way to beat [him] was not in the courtroom, but rather to attack him in the media and in pretrial motions." Compl. ¶ 38. The defendants allegedly intended, "to make it impossible for him to represent his clients, to poison courts against him, to ruin his well earned reputation for honesty and integrity, and to destroy his practice by publicizing false personal attacks." *Id.*

The complaint quoted statements Strueber and Greene allegedly made in *Taylor* court filings accusing Wolk of discovery violations. *Id.* ¶¶ 74. According to Wolk, Judge Carnes's Omnibus Discovery Order, "completely adopted Strueber's and Greene's accusations and .... numerous scathing statements regarding the plaintiff personally, as the lawyer handling the case." *Id.* ¶ 79.

Wolk also asserts Strueber and Greene transmitted the Omnibus Discovery Order "all over the world" to destroy plaintiff's reputation even though they knew it contained false and defamatory statements. *Id.* ¶¶ 93, 94. The complaint does not allege these defendants disseminated the Omnibus Discovery Order after it was sealed, three weeks after it was issued, nor does the complaint allege these defendants violated Judge Carnes' Protective Order.

Wolk's complaint contained nine counts: (I) Defamation—Libel; (II) Injurious Falsehood (Trade Libel, Disparagement of Quality); (III) False Light Invasion of Privacy; (IV) Abuse of Process; (V) Intentional Interference with Contractual Relations; (VI) Intentional Interference with Prospective Contractual Relations; (VII) Intentional Infliction of Emotional Distress; (VIII) Civil Conspiracy; (IX) Injunction—Equity.

■ Wolk confronted a major hurdle in crafting his complaint in this action. In an action for defamation, a plaintiff must specify the allegedly defamatory statements that were made. *See Quinones v. United States.*, 492 F.2d 1269, 1274 (3d Cir.1974). In his complaint, Wolk accused multiple defendants of disseminating defamatory statements by transmitting the Omnibus Discovery Order. However, Wolk could not specify what those statements were; if he had, he would have been in violation of the Protective Order prohibiting publication of the revoked and vacated Omnibus Discovery Order. Wolk explained his dilemma to the court: "because the now-withdrawn Atlanta order is under seal, the false statements it contained concerning the plaintiff will not be set out in this complaint, but will remain available pursuant to this Court's order." Compl. ¶ 83. No party in the action could repeat the allegedly defamatory statements without violating Judge Carnes' Protective Order. Plaintiff's proposed remedy to this unusual situation was that this court issue an order directing another District Court Judge to produce a document she had ordered not to be disclosed.

Before this court is a defamation action in which it is alleged certain defendants defamed plaintiff by transmitting a United Stated District Court order that was valid, binding, and publicly available at the time it was transmitted.

## C. Teledyne's Contempt Application

Shortly after Wolk's action was removed to this court, Teledyne filed an Application for Order to Show Cause Why Arthur Alan Wolk Should Not be Held in Contempt in the Northern District of Georgia. Teledyne argued Wolk violated Judge Carnes' Protective Order when he described the contents of the Omnibus Discovery Order in his complaint in this action. Teledyne requested Judge Carnes to either hold Wolk in contempt and enjoin the action before this court, or issue an order vacating and unsealing the prior orders and allowing Teledyne to use the Omnibus Discovery Order in its defense in this action.

Wolk filed a motion to dismiss Teledyne's motion and he filed a second motion to transfer and in the alternative for recusal. On March 22, 2004, Judge Carnes denied Wolk's motions and set a discovery deadline and hearing on the Contempt Application. This court then placed Wolk's defamation action in suspense pending decision of the Contempt Application because judicial comity required allowing Judge Carnes to rule on whether Wolk had violated her Protective Order. Order of 4/22/04.

On September 8, 2004, Judge Carnes held Wolk violated the Protective Order by summarizing and paraphrasing the Omnibus Discovery Order in his complaint in this action. *Taylor,* 338 F.Supp.2d at 1345. Judge Carnes also decided it was

inappropriate to order Wolk to refrain from discussing the Omnibus Discovery Order because that would effectively enjoin him from pursuing this defamation action. *Id.* 1347–48.

Judge Carnes declined to vacate the entire Protective Order because that would reinstate the Omnibus Discovery Order.[2] *Id.* at 1361. Wolk had filed a substantive motion for reconsideration of the Court's Omnibus Discovery Order that Judge Carnes never considered before *Taylor* settled. *Id.* at 1362. Without a resolution on the merits of that motion, Judge Carnes could not be sure if Wolk might have been successful in having the Omnibus Discovery Order reconsidered. *Id.* Judge Carnes therefore maintained that part of the Protective Order vacating the Omnibus Discovery Order, *Id.* at 1363, but deleted the provisions of the Protective Order prohibiting its disclosure and publication. *Id.* at 1362. Judge Carnes also deleted the paragraph that should the Omnibus Discovery Order be provided to any court in violation of the Protective Order, a copy of the Protective Order would be sufficient to inform that court to disregard the Omnibus Discovery Order in its entirety.[3] *Id.*

### D. Removal from Suspension

This court removed the present action from administrative suspense. Six sets of defendants had filed motions to dismiss for lack of personal jurisdiction and failure to state a cause of action; the court granted plaintiff's request to conduct discovery limited to the issue of personal jurisdiction. (Docket Entry # 121). The court then held two hearings: to hear argument on defendants' motions to dismiss for lack of personal jurisdiction; and to hear argument on defendants' motions to dismiss for failure to state a cause of action.

Wolk withdrew Count V alleging intentional interference with contractual relations and the court dismissed Count VII alleging intentional infliction of emotional distress for failure to state a claim. (Docket Entry # 153). The court had previously dismissed Count IX because it was a demand for relief that failed to allege tortious conduct.

The remaining defendants in this action are: the Teledyne entities, LB & B, Strueber, and Greene. The remaining counts are: I, II, III, IV, VI, and VIII. Before the court is the Motion to Dismiss or in the Alternative for Summary Judgment filed by defendants Lord Bissell & Brook LLP, Strueber and Greene. The motion asserts three bases to dismiss: (1) lack of personal jurisdiction as to Strueber and Greene; (2) failure to state a claim on which relief may be granted as to Greene, Strueber, and LB & B; and (3) failure to plead the alleged defamation. Defendants argue in the alternative that the court should grant summary judgment on counts I, II, III, V,[4] VI, and VIII as barred by the absolute privilege applicable to judicial filings under both Georgia and Pennsylvania law

---

2. Judge Carnes' decision not to hold Wolk in contempt was affirmed on appeal. *Wolk v. Teledyne Technologies Inc.*, Civ. A. No. 03–5693, 2005 WL 1415996, at *1 (11th Cir. June 17, 2005).

3. In order to protect Teledyne from being disadvantaged in this action, Judge Carnes directed the vacation of the Omnibus Discovery Order was effective May 20, 2003, the date the Protective Order was originally entered. *Taylor*, 338 F.Supp.2d at 1363. This effective date meant that at the time defendant Teledyne allegedly distributed the Omnibus Discovery Order to fellow aviation defense attorneys, the Omnibus Discovery Order had not been vacated. *Id.*

4. Defendants motion to dismiss was filed prior to the withdrawal of count V.

# 501

## II. Discussion

### A. Strueber and Greene's Motion to Dismiss for Lack of Personal Jurisdiction

#### 1. Standard of Review

■ The court must determine jurisdiction before reaching the merits because "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. 506, 7 Wall. 506, 514, 19 L.Ed. 264 (1868); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

■ After a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), the burden shifts to the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1121 (W.D.Pa.1997). The plaintiff meets this burden by making a prima facie showing of "sufficient contacts between the defendant and the forum state." *Id.* (quoting *Mellon Bank (East) PSFS, N.A. v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992)). A Rule 12(b)(2) motion inherently requires resolution of factual issues outside the pleadings. Once the defense has been raised, plaintiff must sustain the burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence but may not rely on the pleadings alone. *Weber v. Jolly Hotels*, 977 F.Supp. 327, 331 (D.N.J. 1997) (*citing, inter alia, Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n. 9 (3d Cir.1984)).

Due process requires that a defendant have "minimum contacts" in the forum state, and that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quotations omitted). The Supreme Court has stated, "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ Personal jurisdiction may be exercised because of a defendant's general contacts or claim-specific contacts with the forum. General contacts must be "continuous and systematic" if the plaintiff's cause of action arises from the defendant's non-forum related activities. *See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 151 n. 3 (3d Cir. 1996). There is specific jurisdiction if a plaintiff's cause of action arises out of defendant's forum-related activities, so that the defendant "should reasonably anticipate being haled into court" in that forum. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

#### 2. General Jurisdiction

■ This court can exercise general jurisdiction over out of state residents who have had "continuous and systematic" contacts with Pennsylvania. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). At the time the complaint was filed, Strueber and Greene were partners in the Atlanta, Georgia office of defendant LB & B. LB & B is an Illinois law firm with offices in Illinois, California, Georgia, New York and England, but not Pennsylvania. Neither Strueber nor Greene is admitted to practice in a Pennsylvania

state or federal court. Neither Strueber nor Greene has ever lived or been employed in Pennsylvania. Neither Strueber nor Greene has ever owned any real property or other assets in Pennsylvania.

■ Wolk nevertheless contends the court can exercise general jurisdiction over Strueber because he has worked on three Pennsylvania cases. One action was twenty five years ago; the other two are related actions pending in Philadelphia: *Kanter v. Flying Tiger*, Pa. Com. Pl. January Term 2002 No.1930 and *Braemer v. Flying Tigers, Inc.*, Pa. Com. Pl. January Term 2002 No. 3846. Strueber was working on the *Flying Tigers* actions at the time Wolk filed this action, but Strueber's involvement "consists of supervising an associate's handling of the cases." 2/24/05 Hr'g Tr. at 378. During the past ten years, Strueber concedes he made two one-day trips to Pennsylvania to take depositions in the *Taylor* action. *Id.* at 379. Although Strueber may be supervising a Pennsylvania action, he has not been admitted *pro hac vice.* Two one-day trips to Pennsylvania, made over the course of ten years, are neither continuous nor systematic. The court cannot exercise general personal jurisdiction over Strueber.

■ Wolk also argues the court can exercise general jurisdiction over Greene because, at the time the complaint was filed, Greene was admitted *pro hac vice* in *SmithKline Beecham Co. v. Apotex, Co.*, No. 03–3365, E.D.Pa., and he had also traveled to Pennsylvania on one occasion in the *Taylor* action.[5] Greene, by sworn affidavit, declares he has not signed or submitted any pleadings in *Smithkline* other than his application to be admitted *pro hac vice.* 2/24/05 Hr'g Tr. at 586. Greene is admitted in *Smithkline* among

many other lawyers for his client and many other lawyers from his firm. Besides his trips, Greene's only other contact with Pennsylvania, his *pro hac vice* admission, is insufficient to establish general jurisdiction because an attorney's *pro hac vice* appearance in an unrelated matter in the forum fails to establish general personal jurisdiction. *See Remick v. Manfredy*, 52 F.Supp.2d 452, 457–58 n. 1 (E.D.Pa. 1999), *aff'd in part and rev'd in part on other issues*, 238 F.3d 248 (3d Cir.2001) (single unrelated *pro hac vice* admission, not continuous or substantial, did not support personal jurisdiction); *Sea Marsh Group, Inc. v. SC Ventures, Inc.*, 111 F.3d 129, Civ. A. Nos. 94–1140, 96–1524, 1997 WL 173232, at *6 (4th Cir.1997) ("An attorney's entry of a court appearance *pro hac vice* in the forum state, without more, is not substantial enough contact to permit this court to exercise jurisdiction over his person."). The court cannot exercise general personal jurisdiction over Greene.

### 3. Specific Jurisdiction

■ A court can exercise specific jurisdiction over a defendant if a plaintiff's cause of action arises out of a defendant's forum-related activities, so that the defendant "should reasonably anticipate being haled into court" in that forum. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). At the time Wolk filed his action, Strueber and Greene were Georgia residents. Under Fed.R.Civ.P. 4(e), a district court may assert personal jurisdiction "over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir.1998) (citation omit-

---

5. During the February 24, 2005 hearing, counsel for Greene informed the court that Greene had an additional contact with Pennsylvania, "he had one case in Virginia, unre-lated to this action, where he came here to take a deposition for one day." 2/24/05 Hr'g. Tr. at 42.

ted). Pennsylvania's long arm statute, 42 Pa. Cons.Stat. Ann. § 5532(b), authorizes Pennsylvania courts to exercise personal jurisdiction over nonresident defendants to the constitutional limit of the due process clause of the fourteenth amendment. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992).

In *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir.2001), the Court of Appeals held a district court must conduct a "claim specific" inquiry to determine whether it has personal jurisdiction over a defendant. Remick was an attorney suing his former client Manfredy, a professional boxer, Manfredy's new lawyers, and their law firm. After Manfredy terminated Remick's representation, a dispute arose over fees; Remick exchanged a series of hostile and threatening letters with Manfredy's new counsel. Remick brought an action for breach of contract, defamation, tortious interference with contract, civil conspiracy, and misappropriation of image and likeness. After Remick filed his action in Pennsylvania state court, the defendants removed and moved to dismiss for lack of personal jurisdiction.

The district court held there was no personal jurisdiction over the individual defendants with respect to Remick's claim for tortious interference with contract, but failed to address specifically personal jurisdiction over the defendants with respect to Remick's other claims. The Court of Appeals stated it "may not be necessary to [apply a claim specific analysis] in every multiple claim case, but .... there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims." *Id.* at 255–56.

The Court of Appeals applied one test for the breach of contract claim, and a second for the tort claims. The "effects test" applied to the tort claims was set forth by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct.

1482, 79 L.Ed.2d 804 (1984). In *Calder*, an allegedly libelous *National Enquirer* article was written and edited in Florida, but published nationwide, about the California activities of a California resident. The story had its greatest impact in California because the California resident was a Hollywood entertainer. The Court held that California had personal jurisdiction over the author and editor because the "effects" of their Florida conduct were felt chiefly in California, the state in which plaintiff lived and worked. *See Id.* at 789, 104 S.Ct. 1482. The Court emphasized that the alleged tort was not "mere untargeted negligence" but rather "intentional, and allegedly tortious, actions .... expressly aimed at [the forum state]." *Id.*

In *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir.1998), the Court of Appeals held the *Calder* "effects test" requires a plaintiff to show that:

(1) The defendant committed an intentional tort;

(2) The plaintiff felt the brunt of the harm in the forum so that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;

(3) The defendant *expressly* aimed his tortious conduct at the forum so that the forum can be said to be the focal point of the tortious activity.

*Id.* at 265–66 (footnote omitted) (emphasis added).

*IMO Industries* held New Jersey did not have personal jurisdiction over a German corporation for tortiously interfering with the plaintiff's attempt to sell its Italian subsidiary to a French corporation because plaintiff's headquarters in New Jersey was not the focus of the dispute. The Court of Appeals stated, "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in

itself.... The defendant must manifest behavior intentionally targeted at and focused on the forum for *Calder* to be satisfied." *Id.* at 265 (quotation omitted) (footnote omitted).

Wolk's remaining claims are for defamation, injurious falsehood, false light invasion of privacy, abuse of process, tortious interference with prospective contractual relations, and civil conspiracy. All six claims allege intentional torts arising out of statements made in federal court filings in the Northern District of Georgia and the transmission of its Omnibus Discovery Order.

### a. Defamation and Injurious Falsehood (Counts I and II)

The Restatement of Torts 2d comments that the torts of defamation and injurious falsehood protect different interests but overlap in some situations, particularly in cases of disparagement of plaintiff's business or product. Restatement (Second) of Torts §§ 623A cmt. g (1977). If the allegedly tortious statement reflects merely upon the quality of what the plaintiff has to sell or solely on the character of his business, then injurious falsehood can be claimed. Although it might be possible to imply some accusation of personal incompetence or inefficiency in nearly every derogatory statement made about a business or a product, the courts have insisted that something more direct is required for an actionable defamation claim. If the imputation fairly implies plaintiff is dishonest or lacking in integrity, or that he is perpetrating a fraud upon the public by selling something he knows to be defective, personal defamation may be found. Claims may be brought in the same action for both torts so long as the damages are not duplicated.

In this action, counts I and II for defamation and injurious falsehood are predicated on the same allegedly defamatory publications. The personal jurisdiction issue for these two similar torts can be analyzed together.

 Plaintiff's allegation that Strueber and Greene's court filings in the *Taylor* action were defamatory and that they also defamed him by transmitting the Omnibus Discovery Order to other individuals satisfies the first two parts of the "effects test." Defamation and injurious falsehood are intentional torts and Wolk's professional activities are centered in Pennsylvania. The allegedly defamatory statements challenge Wolk's integrity, and Wolk may reasonably contend he suffered the brunt of the harm in Pennsylvania. *See Keeton v. Hustler Magazine Inc.,* 465 U.S. 770, 780, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (individuals endure the bulk of harm from torts like defamation in their home states.). However, Wolk fails to establish the last element of the effects test: there is nothing to suggest either defendant expressly aimed his tortious conduct at the forum so that the forum can be said to be the focal point of the tortious activity. *Calder,* 465 U.S. at 789, 104 S.Ct. 1482.

Plaintiff does not allege Strueber and Greene published their allegedly defamatory statements in Pennsylvania. The court filings were published in Georgia. Strueber transmitted the Omnibus Discovery Order "only twice": [6]

> On October 1, 2002, upon receipt of the order, I sent it to Global Aerospace, my client Teledyne's insurer in the *Taylor* action, in Short Hills, New Jersey and to Messrs. Howard Thompson and Thomas Hart, Esquire, representatives of my client Teledyne, in Mobile, Alabama.

---

**6.** The court interprets Strueber as saying "twice" because he transmitted it on October 1st and 2nd. However, it appears he transmitted the order three times not twice.

On October 2, 2002, I sent the *Taylor* order to Michael Kelly, Esquire of Kirtland & Packard LLP, an attorney and firm in El Segundo, California which represented Teledyne in other then-pending aviation lawsuits.

Ex. A of Def's Br. ¶ 6. Greene never transmitted the Omnibus Discovery Order. Ex. B of Def's Br. ¶ 5.

Unlike the defendants in *Calder*, whose national magazine was published in California more than any other state and whose story focused on California, 465 U.S. at 788–89, 104 S.Ct. 1482, Strueber and Greene did not expressly aim their conduct at Pennsylvania so that Pennsylvania was the focal point of the tortious activity. *See Remick*, 238 F.3d at 259 (a Pennsylvania District Court did not have personal jurisdiction over defendants who transmitted an allegedly defamatory letter to plaintiff via fax and two persons in Pennsylvania read the letter after finding it on the fax machine). This court does not have personal jurisdiction over Strueber and Greene on Wolk's defamation and injurious falsehood allegations.

### b. False Light Invasion of Privacy (Count III)

██ Under the Restatement of Torts 2d, one who gives publicity to a matter concerning another that places the other before the public in a false light is liable to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E(1977). Pennsylvania follows the Restatement of Torts 2d on most matters. *Medico v. Time, Inc.*, 643 F.2d 134, 138 (3d Cir.1981). This court lacks specific jurisdiction over Strueber and Greene on Wolk's false light count for the same reason there is no specific jurisdiction as to the defamation and injurious falsehood allegations. The three counts are all based on the same acts. Strueber and Greene did not expressly aim their alleged tortious activity at Pennsylvania with knowledge that the harm would likely be caused there. If Wolk suffered harm in Pennsylvania as a result of defendants' alleged tort of false light, that harm was incidental because no publication occurred in Pennsylvania.

### c. Abuse of Process (Count IV)

One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process. Restatement (Second) of Torts § 682 (1977).

██ Wolk alleges Strueber and Greene "filed the statements primarily for the purpose of destroying the plaintiff's credibility with the district court and making it extremely difficult to represent his clients; ultimately to force the plaintiff to settle the case prematurely and far below its value." Compl. ¶ 187. Although Wolk's count for abuse of process repeats general assertions that defendants' defamatory statements have harmed his business reputation in Pennsylvania, the specific injuries he claims to have suffered because of the alleged abuse of process were manifested in the state of Georgia: his credibility with Judge Carnes was allegedly damaged, so it was "extremely difficult to represent his clients;" he was forced "to settle the case prematurely and far below its value;" and his "former good standing with the District Court for the Northern District of Georgia" has been harmed. *Id.* ¶¶ 187–89. If Wolk's allegations are true, defendants

committed a tort in Georgia and plaintiff suffered a harm in Georgia. This court cannot exercise specific personal jurisdiction over defendants Strueber and Greene for Wolk's allegation of abuse of process.

### d. Intentional Interference with Prospective Contractual Relations (Count VI).

 Wolk alleges Strueber and Greene published defamatory statements with the purpose of "damaging plaintiff's professional reputation, thereby preventing future clients from hiring him and instead hiring some other aviation attorney who would be less successful in litigating against them." Compl. ¶ 229. Strueber and Greene did not aim their conduct at Pennsylvania; Pennsylvania was not the focal point of the alleged tortious interference with prospective contracts. *See Remick,* 238 F.3d at 260 (applying "effects test" to allegations of defamation and tortious interference with contract). The court does not have personal jurisdiction over Strueber and Greene in reference to Wolk's allegation of tortious interference with prospective contracts.

### e. Civil Conspiracy (Count VIII)

 There is no liability for civil conspiracy unless there is liability for the act or acts underlying the conspiracy. *Potter v. Hoffman,* Civ. A. No. 98–0406, 1998 WL 826896, at *3 (E.D.Pa. Nov. 24, 1998); *Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337, 1341 (1987). If a court dismisses the causes of action which underlie a civil conspiracy claim, the civil conspiracy claim must also be dismissed. *See, e.g., Samuel v. Clark,* 1996 U.S. Dist. LEXIS 11487, Civ. A. No. 95–6887, 1996 WL 448229, at *4 (E.D.Pa. Aug.7, 1996) (dismissing conspiracy claim where underlying claims for fraud and discrimination were dismissed); *Rose v. Wissinger,* 294 Pa.Super. 265, 439 A.2d 1193, 1199 (1982) (dismissing conspiracy claim where defa-

mation and outrageous conduct claims were dismissed); *Raneri v. Depolo,* 65 Pa. Cmwlth. 183, 441 A.2d 1373, 1376 (1982) (dismissing conspiracy claim where underlying claim for defamation was dismissed). Because all the underlying claims against Strueber and Greene will be dismissed for lack of personal jurisdiction, the court must also dismiss Wolk's allegation of civil conspiracy for lack of personal jurisdiction.

All claims against Strueber and Greene will be dismissed for lack of personal jurisdiction.

### B. LB & B's Motion to Dismiss for Failure to State a Cause of Action and in the Alternative for Summary Judgment

Together with Strueber and Greene, LB & B has moved to dismiss for failure to state a claim upon which relief can be granted and in the alternative for summary judgment. Wolk claims the LB & B is vicariously liable as employer of Strueber and Greene when they filed their allegedly libelous motions in *Taylor* and transmitted the Omnibus Discovery Order.

### 1. Standard of Review

 If a party files a motion to dismiss for failure to state a claim upon which relief can be granted, and the court considers matters outside the pleadings, the motion is to be considered as one for summary judgment. Fed.R.Civ.P. 12(b). If a defendant files a "motion to dismiss and in the alternative for summary judgment," it is appropriate for the district court to hold the nonmoving party "to the more demanding evidentiary standard required to avoid summary judgment rather than to the standard for dismissal of a complaint" when that non-moving defendant has been put on notice that the motion could be treated as one for summary judgment. *Serbin v. Consol. Rail Corp.,* Civ. A. No.

04–3964, 2005 WL 1621202, at *3 (3d Cir. Jul.12, 2005); *see also Scott v. Graphic Communications Int'l Union, Local 97–B,* 92 Fed.Appx. 896, 903, Civ. A. No. 03–2005 (3d Cir. Mar. 17, 2004).

■■■ Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Only a factual dispute that might affect the outcome under governing law precludes the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reviewing a motion for summary judgment, a court must evaluate the facts in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255, 106 S.Ct. 2505.

#### a. The "Law of the Case"

■■■■ On July 18, 2003, prior to this action's removal, Wolk filed a motion for leave to file an amended complaint with the Philadelphia Court of Common Pleas. Wolk attached a copy of the Fourth Amended Complaint to his motion and Judge Allen granted the motion. Wolk argues that by granting the motion to amend, Judge Allen ruled his complaint was legally sufficient to state a claim. Wolk subsequently filed a fifth amended complaint (captioned "amended complaint" on this court's docket), the operative complaint in this action, but the allegations contained in the fifth amended complaint were essentially identical to the allegations found in the fourth amended complaint. Wolk argues that under the "law of the case" doctrine, as set forth in *Hamilton v. Leavy,* 322 F.3d 776, 786–87 (3d. Cir. 2003), this court should deny defendants' motion to dismiss. The law of the case doctrine "limits relitigation of an issue once it has been decided in an earlier stage of the same litigation." *Hamilton* 322 F.3d at 786.

This court does not believe Judge Allen's ruling allowing Wolk to amend his complaint upheld the legally sufficiency of the amended complaint. *See Denenberg v. American Family Corp. of Columbus, Ga.,* 566 F.Supp. 1242, 1254 (E.D.Pa.1983) ("[l]eave to amend will be granted without determining whether the amended complaint states a cause of action for defamation."). It is improbable that Judge Allen would have made such a ruling so early in the proceedings in an action of first impression, where plaintiff alleges defamation by transmission of a valid, binding and publicly available court order. This complex action has had thirty eight defendants from all over this country and Israel. Wolk could not even repeat the alleged defamation in his complaint without violating Judge Carnes' Protective Order. Judge Allen's preliminary ruling will not be interpreted as doing more than allowing a plaintiff to amend his complaint.

Even if we were to accept Wolk's argument concerning the implication of Judge Allen's ruling, the law of the case doctrine would not preclude this court from revisiting whether his complaint states a cause of action. "Reconsideration of a previously decided issue may [be] appropriate .... when the record contains new evidence." *Id.* Considerable time has passed since this action was removed to federal court and the discovery process has produced new evidence. Discovery on the personal jurisdiction issue produced two massive volumes totaling almost 1400 pages. Five different sets of defendants filed motions to dismiss for failure to state a cause of action and the court has held numerous hearings and conferences. Even if Wolk is correct in his interpretation of Judge Allen's ruling permitting amendment of the complaint, the law of the case would not

preclude this court from reconsidering whether his amended complaint survives a motion to dismiss and certainly would not bar ruling for defendant on a motion for summary judgment.

### b. Choice of Law

■ A federal court sitting in diversity must apply the choice of law rules of the forum state. *Compagnie des Bauxites de Guinee v. Argonaut–Midwest Ins. Co.*, 880 F.2d 685, 688 (3d Cir.1989). In *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), the Pennsylvania Supreme Court abandoned the traditional *lex loci delicti* doctrine applying the law of the place of injury in tort cases. The court instead opted for "a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Id.* at 805. This method of analysis involves a hybrid approach that "combines the approaches of both the Restatement II (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir.1991) (quoting *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir.1978))

LB & B, Strueber and Greene argue that because all of Wolk's claims against them relate to conduct in Georgia or concern *Taylor*, a Georgia action, Georgia law should govern. Wolk contends that Pennsylvania law should apply. Wolk argues that in defamation cases, "courts usually apply the law of the plaintiff's domicile, because the interest protected is reputation, and a person's reputation is usually greatest in the area where they live." Pl.'s Opp. at 9. Although LB & B contends Georgia law should govern this dispute, it argues in the alternative that Wolk has failed to state a claim under the laws of either Georgia or Pennsylvania. If no true conflict is presented, a "court need not

address the choice-of-law issues." *Williams v. Stone*, 109 F.3d 890, 896 (3d Cir.1997). For each count, the court must determine whether a true conflict exists between Pennsylvania and Georgia law before deciding which law governs.

### 2. Defamation and Related Claims (Counts I–III)

Wolk alleges Strueber and Greene defamed him when they: (1) made untrue statements in filings in the Georgia District Court in *Taylor*; and (2) transmitted the Omnibus Discovery Order.

### a. Statements Made in Court Filings

■ LB & B correctly argues that under both Pennsylvania and Georgia law, the absolute privilege protecting judicial proceedings applies and bars all libel and defamation actions based on statements in pleadings, other court filings, and judicial orders and opinions. *Greenberg v. Aetna Ins. Co.*, 427 Pa. 511, 235 A.2d 576 (1967) (plaintiff had no libel cause of action where defendants accused plaintiff of arson and intent to defraud in a court filing); *Williams v. Stepler*, 227 Ga.App. 591, 490 S.E.2d 167 (1997) (" '[A]ll charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous.' ") (citing Ga.Code Ann., § 51–5–8). Wolk has no cause of action for his defamation-related claims based on the statements Strueber and Greene made in court filings in *Taylor*. If counts I, II, and III (alleging defamation, injurious falsehood and false light invasion of privacy) survive, they must be based on the transmission of Judge Carnes' Omnibus Discovery Order.

### b. Transmission of the Omnibus Discovery Order

The parties agree Strueber and Greene transmitted an accurate copy of the Omnibus Discovery Order. Wolk does not allege that Strueber and Greene altered the document in any manner nor does he allege these defendants added any disparaging remarks to the transmission. Wolk also does not allege that the transmission occurred after the document was placed under seal. Wolk's contention is that the Omnibus Discovery Order was a defamatory statement and "when you republish defamatory statements, you adopt them as if they're your own, and this includes the transmittal of written statements. So it's our argument that under defamation law, republishing that order is adopting those statements." 3/7/05 Hr'g Tr. at 21–22. LB & B contends that the accurate republication of an absolutely privileged judicial document is likewise privileged and cannot be the basis for civil liability. Defs.' Mot. at 11.

▮▮▮ Wolk has no cause of action under Georgia law for his allegation that these defendants accurately republished the Omnibus Discovery Order. *Henson v. American Family Corp.*, 171 Ga.App. 724, 321 S.E.2d 205, 212 (1984) (any republication of judicial proceedings or filings resulting from a fair and honest report of the proceedings or filings is also privileged) (citing Ga.Code Ann., § 51–5–7(5)); *Berger v. Shea*, 150 Ga.App. 812, 258 S.E.2d 621, 622 (1979) ("It would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets anyone know he has brought it.") Wolk correctly argues, however, that Pennsylvania common law draws a distinction between the absolute privilege accorded to judicial proceedings and the qualified privilege accorded to the reporting of judicial proceedings. The Pennsylvania Supreme Court has defined the absolute judicial privilege:

> All communications pertinent to any stage of judicial proceedings are accorded an absolute privilege which cannot be destroyed by abuse . . . . (citations omitted) Thus statements by a party, a witness, counsel, or a judge cannot be the basis of a defamation action whether they occur in the pleadings or in open court.

*Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 275 A.2d 53, 56 (1971). However, "judicial immunity does not extend to remarks made outside the judicial sphere." *Barto v. Felix*, 250 Pa.Super. 262, 378 A.2d 927, 930 (1977) (holding that reporting of judicial proceedings is accorded only a "qualified immunity" in Pennsylvania); *see also Sciandra v. Lynett*, 409 Pa. 595, 187 A.2d 586 (1963).

Wolk's argument places great weight on *Barto,* a Pennsylvania Superior Court decision. In *Barto,* the Superior Court declined to extend an absolute judicial privilege to a public defender who had called a press conference where he repeated allegedly defamatory statements he had made in a court filing. *Barto,* 378 A.2d at 930. The *Barto* decision has been cited for the proposition that, where "the plaintiff is able to demonstrate that defamatory communications to the press were made for an improper or malicious motive, the qualified privilege is lost." *Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337, 1344 (1987).

▮▮ There are critical distinctions between the present action and *Barto.* First, in *Barto,* the public defender was repeating statements he had authored; here the defendants transmitted a judicial order. Second, Barto repeated his statements in a news conference he had called and his intent was to broadcast his message as widely as possible. Strueber and Greene transmitted the Omnibus Discov-

ery Order only to their client's insurer, Global Aerospace, and three other attorneys who represented their client at the time. Ex. A to Defs.' Mot. ¶ 6.[7]

Furthermore, the accurate republication of judicial orders serves an important public interest. *Lowenschuss v. West Publ'g Co.*, 542 F.2d 180, 185 (3d Cir.1976).

> As ours is a common-law system based on the "directive force" of precedents, its effective and efficient functioning demands wide dissemination of judicial decisions. That segment of the public engaged in the practice of law necessarily must remain abreast of decisions which subtly shape the contours and the body of the evolving law. Practicing attorneys must be able easily to locate authoritative precedents for their positions. Courts must be able to rely on briefs and citations of attorneys practicing before them and on their own research efforts to direct them quickly to the relevant cases. Even that part of the law which consists of codified statutes is incomplete without the accompanying body of judicial decisions construing the statutes.

*Lowenschuss v. West Pub. Co.*, 542 F.2d 180, 185 (3d Cir.1976). Although *Lowenschuss* applied New York law instead of Pennsylvania law, and the re-publisher in that case was a publishing company instead of a lawyer, the logic of the decision—that "verbatim publication and effective dissemination of judicial opinions serves an intrinsic function in our system of jurisprudence"—is applicable. *Id.* at 186.

■ Neither party could find precedent for the precise issue, but this court predicts the Pennsylvania Supreme Court would hold that judicial privilege extends to lawyers who accurately transmit a valid and publicly available court order to their client's insurer and other counsel who represent their client. Such a transmission would be absolutely privileged even if it is alleged that the lawyers who transmitted the order knew that it contained erroneous, false, and even defamatory statements. The remedy available to the defamed party is an appeal of the injurious judicial order, not an action against a lawyer who accurately transmitted it to parties legitimately interested in the litigation.

■ Additionally, Strueber and Greene's transmission of the Omnibus Discovery Order was protected because the privilege extends to attorneys' statements to their clients:

> An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto.

Restatement (Second) of Torts § 586 (1977). As one Pennsylvania court has noted, various jurisdictions have interpreted this principle too broadly:

> Other jurisdictions, applying the Restatement view, have held the privilege applicable to a letter from counsel to an insurer as a preliminary to suit; a letter

---

7. Because this exhibit, an Affidavit of Thomas J. Strueber, is not part of plaintiff's complaint, LB & B's motion will be treated as one for summary judgment. *See Serbin v. Conrail,* 2005 WL 1621202 at *5. Plaintiff's counteraffidavit concerning contacts with Pennsylvania asserted only his belief that the *Taylor* order was provided to then-defendants Wilson and Jacobi by "other defendants involved, contrary to their affidavits" because plaintiff believed it was highly unlikely that Wilson and Jacobi would have obtained the publicly-available order by monitoring the *Taylor* docket. Plaintiff's Resp., Ex. B, 12¶. This allegation asserts only plaintiff's speculative belief and does not counter the specific affidavit of Mr. Strueber about dissemination of the order.

from counsel to a party against whom suit was seriously contemplated; a letter from counsel to the attorney for an adverse party; letters from counsel to a client and to the judge in a pending action; a letter from counsel to a judge concerning acts of former counsel in a pending action; an affidavit and letter to a party from counsel seeking settlement. *Smith v. Griffiths*, 327 Pa.Super. 418, 476 A.2d 22, 25 (1984) (citations omitted). Nevertheless, to permit an attorney to serve his client, this court believes the privilege must be broad enough to include occasions where an attorney transmits a valid and publicly available court order, relevant to his client's litigation interests, to his client's insurer and counsel who represent that client in other matters. The court concludes that Strueber and Greene's transmission of Judge Carnes' Omnibus Discovery Order is privileged under Pennsylvania law.

Even drawing all inferences in favor of plaintiff, Wolk has failed to state a cause of action for any of his defamatory tort allegations based on Strueber and Greene's accurate transmission of the Omnibus Discovery Order under either Pennsylvania or Georgia law. Summary judgment will be granted on Counts I, II and III, the defamation tort allegations asserted against LB & B.

### 3. Abuse of Process (Count IV)

Wolk argues that even if he has failed to state a cause of action for his defamation related torts, the torts of abuse of process and intentional interference with prospective contractual relations are non-defamation related torts, and therefore those claims are not barred by the absolute privilege protecting judicial proceedings. Pl.'s Opp. at 11. In order to determine what law applies, the court must first compare the abuse of process cause of action under Georgia and Pennsylvania Law.

In Georgia, before asserting an abuse of process claim, a plaintiff must give written notice of the intent to assert such a claim, specify the filing at issue, and provide defendant the opportunity to withdraw or dismiss the offending suit, motion or other proceeding. Failure to allege or prove that plaintiff gave defendant the required notice and opportunity to withdraw is fatal to an abuse of process action under Georgia law. Ga.Code Ann., § 51–7–84; *Phillips v. MacDougald*, 219 Ga.App. 152, 464 S.E.2d 390 (1996). In Pennsylvania, to state a cause of action for abuse of process, a plaintiff must allege that the defendant: (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. *Hart v. O'Malley*, 436 Pa.Super. 151, 647 A.2d 542, 551 (1994).

Wolk does not dispute LB & B's contention that he has failed to assert a cause of action for abuse of process under Georgia law; it is conceivable that Wolk has stated a cause of action for abuse of process under Pennsylvania law. Plaintiff alleges Strueber and Greene made statements in court filings in the *Taylor* action they knew to be false with the intent of "destroying the plaintiff's credibility with the district court and making it extremely difficult for him to represent his clients." Compl. ¶ 186. There may be a true conflict between the law of Georgia and Pennsylvania; therefore, choice of law analysis as it relates to Wolk's abuse of process claim is required.

According to Wolk's allegations, the tort of abuse of process was committed in Georgia and the injuries Wolk claims to have suffered were manifested in Georgia. For example, Wolk alleges: (1) his credibility with Judge Carnes was damaged, "making it extremely difficult to represent his clients;" (2) he was forced "to settle the

case prematurely and far below its value;" and (3) his "former good standing with the District Court for the Northern District of Georgia" has been harmed. Compl. ¶¶ 187–89. Pennsylvania has only the most tangential contact with—and interest in—this claim, which relates to process before a Georgia federal court. Therefore, Georgia law should apply. *See Denenberg v. American Family Corp. of Columbus, Ga.*, 566 F.Supp. 1242, 1248 (E.D.Pa.1983) (predicting the Pennsylvania Supreme Court would adopt Restatement of Conflicts of Law 2d § 155, providing that an abuse of process action is "determined by the local law of the state where the proceeding complained of occurred"); *see also Rosen v. Tesoro Petroleum Corp.*, 20 Phila. Co. Rptr. 374, 380 (Pa.Com.Pl. Mar.7, 1990) (in an abuse of process claim where Pennsylvania citizens allegedly suffered the tort of abuse of process in a Texas court proceeding, Pennsylvania's interest in protecting its citizens from being subjected to the malicious use of the process of another state "is not as weighty as Texas' interest in regulating the use of its process and in determining when its judicial system is maliciously used.").

Because Georgia law governs, Wolk has failed to state a cause of action for abuse of process against LB & B. Count IV will be dismissed with prejudice.

### 4. Intentional Interference with Prospective Contractual Relations (Count VI)

In order to determine what law applies, the court must compare this cause of action under Georgia and Pennsylvania law.

Under Pennsylvania law, it is not clear whether judicial privilege applies to and bars intentional interference with prospective contractual claims; the parties have cited apparently conflicting Superior Court decisions. Wolk cites *Kelly–Springfield Tire Co. v. D'Ambro*, 408 Pa.Super. 301, 596 A.2d 867 (1991), holding a plaintiff may bring a tortious interference with prospective contractual action based on court filings. LB & B cites *Pelagatti v. Cohen*, 370 Pa.Super. 422, 536 A.2d 1337 (1987), for the proposition that judicial privilege applies to and bars intentional interference with prospective contract claims under Pennsylvania law. However, there is no need to determine whether there is a cause of action for tortious interference with prospective contracts based on either statements made in court filings or the transmission of a valid, publicly available court order because a necessary element of this tort claim under Pennsylvania law is "actual damage." *Kelly–Springfield Tire Co.*, 408 Pa.Super. 301, 596 A.2d 867, 871 (1991) (in an action for tortious interference with contract claim, a plaintiff must plead: (1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct); *see also Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 184 (3d Cir.1997). Although "prospective contractual relations are, by definition, not as susceptible of definite, exacting identification as is the case with an existing contract with a specific person," *Kelly–Springfield*, 596 A.2d at 871, to state a cause of action for tortious interference with prospective contracts a plaintiff must plead "something more than a mere hope or the innate optimism of the salesman." *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 471 (1979) (plaintiff must plead actual damage in his or her complaint in order to state a cause of action for intentional interference with prospective contractual relations); *see also Brunson Communications, Inc. v. Arbitron, Inc.*, 239 F.Supp.2d 550, 578 (E.D.Pa. 2002) (granting motion to dismiss for fail-

ure to state a claim where plaintiff could not identify "a single past, present or prospective customer" with whom it had a prospective contract that was not finalized because of defendant's actions).

 Georgia law is very similar. There is a cause of action for tortious interference with prospective business relations as well as existing ones, and liability results not only from disruption of the relationship but also from elimination of the injured party's ability to perform. *Renden, Inc. v. Liberty Real Estate Ltd. P'ship III*, 213 Ga.App. 333, 444 S.E.2d 814, 817 (1994). To plead a cause of action for interference with prospective business relations, plaintiff must demonstrate that, absent the interference, those relations were reasonably likely to develop in fact. *Id.*; *Perry & Co. v. New South Ins. Brokers*, 182 Ga.App. 84, 354 S.E.2d 852 (1994). In *Int'l Brominated Solvents Ass'n v. Am. Conf. of Gov't Indus. Hygienists, Inc.*, Civ. A. No. 04-0394, 2005 WL 1073927, at *1 (M.D.Ga.2005), plaintiffs' allegations were insufficient as a matter of law because they did not contain sufficient facts to sustain a claim for tortious interference. The District Court dismissed a count for tortious interference with prospective business relations because the plaintiffs had failed to specify actual damages in the pleadings:

> Plaintiffs seek to be compensated for unsubstantiated, speculative economic injury that has yet to occur. This tort requires a plaintiff to show that the defendant induced a breach of contract or caused a lost business relationship that resulted in a harm to the plaintiff. Plaintiffs have not alleged one instance in which either of these events has in fact happened. This is not to say that future losses cannot be compensated. But with respect to the charge that prospective business relationships will not develop, Plaintiffs have not alleged that

> such relationships would have formed in the absence of [defendants' alleged misconduct].

*Id.* at *17.

 Nowhere in his complaint, or in his response to these defendants' motion to dismiss, has Wolk specified one prospective contract with which these defendants intentionally interfered. Instead, Wolk makes vague and general assertions alleging that "the false publicity has caused potential clients, who otherwise would have sought his services, not to hire plaintiff" and because "of the publication, plaintiff's competition may use or have used the damaging and false opinion, and others in the defense bar have used it to damage plaintiff's credibility with courts, insurers, and clients." Compl. ¶¶ 233, 234. During the hearing on defendants' 12(b)(6) motion, the court asked plaintiff's counsel whether Wolk could specify a prospective contract that had been interfered with. Counsel simply responded, "I'm told by my client that his business has been harmed by all the conduct here." 3/7/05 Hr'g Tr. at 51.

Wolk has failed to state a cause of action against LB & B for tortious interference with prospective contract/business relations under either Pennsylvania or Georgia law. Count VI will be dismissed with prejudice.

### 5. Civil Conspiracy (Count VIII)

There is no liability for civil conspiracy unless there is liability for the act or acts underlying the conspiracy. *Potter v. Hoffman*, Civ. A. No. 98-406, 1998 WL 826896, at *3 (E.D.Pa. Nov.24, 1998); *Pelagatti v. Cohen*, 370 Pa.Super. 422, 536 A.2d 1337, 1341 (1987). If a court dismisses the causes of action underlying a civil conspiracy claim, the civil conspiracy claim must also be dismissed. *See, e.g., Samuel v. Clark*, Civ. A. No. 95-6887, 1996 WL 448229, at *4 (E.D.Pa. Aug.7, 1996) (dis-

missing conspiracy claim where underlying claims for fraud and discrimination were dismissed); *Rose v. Wissinger*, 294 Pa.Super. 265, 439 A.2d 1193, 1199 (1982) (dismissing conspiracy claim where defamation and outrageous conduct claims were dismissed); *Raneri v. Depolo*, 65 Pa. Cmwlth. 183, 441 A.2d 1373, 1376 (1982) (dismissing conspiracy claim where underlying claim for defamation was dismissed).

Having dismissed all the underlying claims against LB & B for a failure to state a cause of action, the court will also dismiss count VIII for civil conspiracy.

### III. Conclusion

The court will dismiss all counts against defendants Strueber and Greene for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). Further, the court will grant summary judgment for Lord Bissell & Brook. An appropriate order follows.